1   UNITED STATES BANKRUPTCY COURT

2   EASTERN DISTRICT OF NEW YORK

3   Case No. 23-71048-reg

4   Adv. Case No. 23-08034-reg

5   - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   WICKAPOGUE 1, LLC,

9

10          Debtor.

11  - - - - - - - - - - - - - - - - - - - - - - - - - x

12  WICKAPOGUE 1, LLC,

13              Plaintiff,

14          v.

15  BLUE CASTLE (CAYMAN) LTD.,

16              Defendants.

17  - - - - - - - - - - - - - - - - - - - - - - - - - x

18              United States Bankruptcy Court

19              290 Federal Plaza

20              Central Islip, New York 11722

21

22              June 28, 2023

23              10:00 AM

24

25

1    B E F O R E :

2    HON ROBERT E. GROSSMAN

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   UNKNOWN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **HEARING re Pre-Trial Conference**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    **Transcribed by:   Sonya Ledanski Hyde**

1    A P P E A R A N C E S :

2

3    OFFIT KURMAN PA

4         Attorneys for Wickapogue 1, LLC

5         590 Madison Avenue, 6th Floor

6         New York, NY 10022

7

8    BY:  JASON A. NAGI

9

10   HASBANI & LIGHT PC

11        Attorneys for Creditor

12        450 7th Avenue, Suite 1408

13        New York, NY 10123

14

15   BY:  RAFI HASBANI

16

17   LAW OFFICE OF GEORGE M. GAVALAS PC

18        Attorneys for Mark and Nichole Gallagher, et al.

19        2001 Marcus Avenue, Suite N 125

20        New Hyde Park, NY 11042

21

22   BY:  GEORGE M. GAVALAS

23

24

25

1    LEECH TISHMAN ROBINSON BROG

2          Attorneys for Nichole and Mark Gallagher

3          875 3rd Avenue, 9th Floor

4          New York, NY 10022

5

6    BY:  ROGER A. RAIMOND

7          ROBERT M. SASLOFF

8

9    UNITED STATES DEPARTMENT OF JUSTICE

10          Attorneys for the U.S. Trustee

11          Long Island Federal Courthouse

12          560 Federal Plaza, Room 560

13          Central Islip, NY 11722

14

15    BY:  STAN YANG

16

17    COOPER & KIRK PLLC

18          Attorneys for Blue Castle Cayman

19          1523 New Hampshire Avenue NW

20          Washington, D.C. 20036

21

22    BY:  JOHN RAMER

23

24

25

1   ALSO PRESENT:

2   GREG CORBIN

3   DAVID GOLDWASSER

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  Next matter is Adversary No. 23-8034,

3     Wickapogue LLC v. Blue Castle Cayman LTD.  Please state your

4     appearances.

5              MR. RAIMOND:  Roger Raimond from Leech Tishman

6     Robinson Brog for Nicole and Mark Gallagher.

7              MR. HASBANI:  Rafi Hasbani from Hasbani & Light

8     for the creditor Blue Castle Cayman LTD.

9              THE COURT:  Anybody else on the phone?

10              MR. RAMER:  John Ramer on behalf of Blue Castle.

11              THE COURT:  Hold it.  Who was the last person?

12              MR. RAMER:  John Ramer on behalf of Blue Castle

13     Cayman.

14              MR. GOLDWASSER:  David Goldwasser, chief

15     restructuring officer, Wickapogue.

16              THE COURT:  Okay.

17              MR. CORBIN:  Greg Corbin, the broker for North

18     Point Real Estate Group.

19              THE COURT:  That it?

20              CLERK:  I believe so, Judge.  I know Joyce Kuhns

21     was supposed to call in.

22              MR. NAGI:  Has another hearing, so there may be a

23     conflict (indiscernible).

24              THE COURT:  All right, let's get live people.

25              MR. SASLOFF:  Robert Sasloff from the firm Leech

1    Tishman Robinson Brog, bankruptcy counsel to Mark and Nicole

2    Gallagher.

3          THE COURT:  Welcome.

4          MR. SASLOFF:  Thank you, Your Honor.

5          MR. GAVALAS:  Good morning, Your Honor.  George

6    Gavalas, G-A-V-A-L-A-S, on behalf of Michael (audio glitch).

7          MR. YANG:  Good morning again, Your Honor.  Stan

8    Yang for the United States Trustee.

9          MR. NAGI:  Good morning, Your Honor.  Jason Nagi

10    from Offit Kurman on behalf of the Debtor.

11          THE COURT:  Mr. Nagi, welcome.  Let Mr. Nagi

12    start.  Best way to do this.

13          MR. NAGI:  Certainly, Your Honor.  So there's a

14    number of motions on before the Court.  We think that based

15    upon what the Court has said, we should probably handle them

16    -- first the discussion, but from an ordered perspective, it

17    would be the motion for the ability to be a Debtor and to

18    turn over the broker retention motion, the bar date motion,

19    the attorney retention motion, and the cash collateral

20    motion.

21          Now from the perspective of where we are in

22    settlement, which I think I'll start with, Your Honor.  The

23    Debtor has been in discussions with the Gallaghers -- we'll

24    just call them counsel for the objectors -- primarily with

25    Mr. Sasloff, and based upon the last time that we were in

1    front of the Court, Mr. Sasloff has also been negotiating

2    with the lender.  The Debtor did facilitate that to some

3    extent and there were some settlement discussions and an

4    offer was around -- was offered, again, not by the Debtor

5    because the Debtor believes that it can come to an agreement

6    with the objectors.

7           But there's really an issue between the Gallaghers

8    or the objectors and the lender as to the reduction that is

9    being requested of lender's claim.  And so --

10          THE COURT:  The lender's claim against the

11   Gallaghers, not against the Debtor.

12          MR. SASLOFF:  No, against the Debtor, Your Honor.

13          MR. NAGI:  Indeed, the Debtor.  The amount of the

14   lender's claim, not the fact that there is a claim, but

15   there are specific objections that were brought by the

16   Gallaghers and those objections relate to the amount of the

17   lender's claim.

18          THE COURT:  But the reason the Gallaghers care

19   about that is they are guarantors of the Debtor's claim.  If

20   they weren't, they basically would not even have standing to

21   argue about the Debtors other than whether they own the

22   Debtor, the Debtor's claim.  So the two issues are, you guys

23   can cut a deal with yourself on the amount of debt of the

24   debt between the Debtor and the mortgage, which I see as a

25   single entity.  Not legally, but some entity.  Gallaghers

1    want, they want out and whatever else they want, that's Mr.

2    Sasloff's negotiation, which doesn't have any (audio

3    glitch).  The Debtor is only interested because it helps

4    move this case forward.

5           MR. NAGI:  That's correct, Your Honor.

6           THE COURT:  Okay.

7           MR. NAGI:  So I could go -- I know Your Honor

8    reads the papers and we could go and I could go through the

9    motion if Your Honor would like, or if Your Honor has

10   questions, I'm willing to do this in the most efficient way

11   that the Court would like.

12          THE COURT:  Well, I think I'd like a record of

13   what's going on, so I'm going to ask you to at least go

14   through it, but are we at the point where the real issue in

15   front of the Court, whether the Gallaghers, Nicole and Mark,

16   as guarantors and any other role they play individually,

17   that if their counsel can cut a deal with Blue Cayman who's

18   the mortgagee --

19          MR. SASLOFF:  Blue Castle.  Blue Castle Cayman,

20   which is why Your Honor said that.

21          THE COURT:  It was originally blue Cayman.

22          MR. SASLOFF:  Blue Castle, a Cayman corporation.

23          THE COURT:  With Blue, whether they can cut a deal

24   with Blue that I assume gets them off any personal

25   liabilities and X, whatever X may be.

1            MR. NAGI:  I think it's that, but it's a little

2    bit more complicated.  I'm not speaking for Mr. Sasloff who

3    I know and respect.  I'm not putting any words in his mouth

4    but -- and so he should feel free to correct the record, but

5    my understanding is that it's really the Gallaghers that

6    trying to get all of 00 the Gallaghers signed a lot of,

7    let's call it debt instruments, right?

8            THE COURT:  Ah, yes.

9            MR. NAGI:  We've got $20 million worth of debt on

10   the property, so there's a second mortgage to Title LLC.

11   Then there's, I think three separate judgments that were

12   entered on consent.  And I believe they were signed.  They

13   were all signed by Nicole Gallagher as well.

14           THE COURT:  But the Gallaghers aren't in front of

15   me.  They're not debtors in front of me.

16           MR. NAGI:  They're not debtors in front of Your

17   Honor, no.

18           THE COURT:  And your plan, were it to be executed,

19   even though --

20           MR. NAGI:  Yes.

21           THE COURT:  -- mechanics liens or not, those liens

22   you ask to be wiped out.

23           MR. NAGI:  Well, what we've said from the

24   beginning is the entire idea is to have a sale through a

25   plan of organization where the first and the second lien

1    lenders would have their -- the first and second liens were

2    the only secure liens on the property, would have their

3    rights to credit the amount of their claim.  And the

4    property would be sold for its highest value through a

5    broker with a with a very big reach, who's already kind of

6    pre-marketed it already and has a large list of people and

7    the property would be sold.

8            And then there would -- perhaps there is a fight

9    over distribution amongst the first and the second lien

10   lender.  Perhaps the Gallaghers are involved in that in some

11   way.  And if there's a way to negotiate something where

12   everybody can get a little bit as a Debtor, I'm more than

13   happy to do that.  But that's really what's -- where we're

14   at.

15           THE COURT:  Well, a very senior partner in

16   Sasloff's firm and I used to do these cases 30 years ago or

17   so.  So I have some experience historically in them.  The

18   hook in this one is how do you get rid of -- if it is a hook

19   -- for the Gallaghers, people who are going to come after

20   them after they give you the property and you march into the

21   sunset.  And that's just, whatever cards they have to try

22   and get a better deal is what they're doing.  But is there

23   any argument anymore?  Is there still a viable argument?

24           Current holder of the LLC interest in the Debtor

25   is you and not (audio glitch) Gallagher.  Has that case been

1    disposed of?  I know it's been removed here, but has it been

2    solved or is that still an active litigation?

3              MR. NAGI:  You're talking about the litigation

4    that was removed here.  That litigation is an active

5    litigation in that it hasn't been dismissed and so that --

6              THE COURT:  It's still in front of me as to

7    whether or not you're the rightful party to be -- for this

8    Debtor -- no, the Debtor is, whether the principal of the

9    entity that owns the Debtor, who that is.  That's still a

10   live issue.

11             MR. NAGI:  Well, Your Honor, we do not believe

12   that that's a live issue anymore because if you look at the

13   cases --

14             THE COURT:  Is there an issue an order on that?

15             MR. NAGI:  No, Your Honor didn't issue an order,

16   but there's UCC 9-625 that says something very clear that no

17   one has disputed that when the hammer falls at the auction,

18   all that's -- you don't have a right --

19             THE COURT:  You may win that fight, but it is a

20   fight unless he stands up and says, you're right, I concede,

21   which I probably guess he's not going to do.

22             MR. NAGI:  I'm sure he won't.  Agree with that.

23             THE COURT:  So it's a live issue.  You may think

24   you'll win it and you may view the law on your side to win

25   it, but from my perspective, I've got two parties who have

1    rights.  He has filed papers and he says you're wrong, you

2    may think he's wrong, but I've got to decide that.  So I

3    have an issue in front of me that I have not decided.  By

4    whatever you may believe the law is and, you know, it is

5    what it is, unless you can tell me I don't have that issue.

6          MR. NAGI:  Well, what I can tell you Your Honor is

7    that we teed that issue up for the Court in -- on Docket No.

8    45 which is the ability to be a Debtor in the turnover which

9    Your Honor had requested that we do.  So Your Honor is

10   correct that if Your Honor does not decide that motion, then

11   it is still an open issue.

12         THE COURT:  (indiscernible) separate issue.

13         MR. NAGI:  But they're two separate -- look.  I

14   would say it like this.  There's two parts of the motion.

15   There's a motion for turnover.

16         THE COURT:  correct.

17         MR. NAGI:  And there's a motion for a

18   determination that -- of the Debtor's ability to be a

19   Debtor.  And so we have put that up in front of Your Honor

20   for determination.

21         THE COURT:  I'm just trying to catch up --

22         MR. NAGI:  Yes.

23         THE COURT:  -- on your conversations you all have

24   had.

25         MR. NAGI:  That's not.  I agree.  I'm just trying

1    to be clear so that there's no --

2            THE COURT:  I think, the way I view the turnover

3    issue is somebody owns the Debtor in front of me.  It is a

4    Debtor and somebody owns it, and somebody is occupying that

5    space and that Debtor has the right.  The Court would want

6    to ask the Debtor to make sure it gets paid for the benefit

7    of its creditors for the use of that asset.  That's

8    regardless of who owns it.

9            MR. NAGI:  That's --

10            THE COURT:  We all agree that the people who live

11    there currently don't own the Debtor.  Neither Mark

12    Gallagher nor the other guy who's there are the owners of

13    the Debtor.

14            MR. NAGI:  That is correct.

15            THE COURT:  Nobody's arguing that.  It's either

16    Nicole Gallagher or your client.

17            MR. NAGI:  That's correct, Your Honor.

18            THE COURT:  But the Debtor exists and somebody's

19    got to pay the Debtor for occupy -- I'll get to that.

20    That's the turnover.  The ownership of the Debtor is also an

21    issue that is in front of me and we'll talk about how to

22    proceed with it.  That's why I don't want to shorthand this

23    conversation in that I don't want any mistakes about what I

24    say or where the case is.

25            I think in good faith, you guys are trying to

1    resolve it.  But I think there are going to be a lot of

2    implications to that so that if -- unless somebody assumes

3    obligations to a third party or that third party waives that

4    obligation, you know, in some sense, it's almost like a

5    third-party release.  You're saying, can a Court, can this

6    Court cause an order to be entered, requires people who may

7    old judgments against the Gallaghers independently from

8    enforcing this?

9            MR. NAGI:  I think that it would need to be a

10    consensual agreement.  I don't think that -- I was never

11    proposing nor do I think that Your Honor would ever agree

12    that that's something that the Court could do without

13    exception --

14            THE COURT:  -- clear.

15            MR. NAGI:  I understand completely, Your Honor.

16            THE COURT:  All right.  Why don't you go on and

17    tell me where we -- what the story is here.  Let's -- go in

18    order you want of the motions you want me to hear.

19            MR. NAGI:  Sure, Your Honor.  So, I guess we'll

20    start with Docket No. 45, which is the -- and I think we

21    should start with (indiscernible) of the motion that

22    concerns the ability to be a Debtor.

23            THE COURT:  Don't you want to get retained?

24            MR. NAGI:  Yes, Your Honor.  I would.  I'm happy

25    to discuss that as well, Your Honor.

1          THE COURT:  Well, let's do A before we get to B,

2    C, and D.  You guys had filed a motion to be retained.  UST

3    had raised objections.  The Court had its own questions.  It

4    appears that you believe in answering a number of those

5    questions, your other way to resolve it is to bring in

6    conflicts counsel or potentially in the form of Avrum Rosen

7    the Court is familiar with.

8          So I'll ask the UST where their objections to

9    retention currently stand.

10          MR. YANG:  Your Honor, the issue here is that --

11    with the counsel's firm, is we're actually satisfied the

12    requirement under 11 -- of 101.14 and 327, is it a

13    disinterested party?  Not quite so.  Disclose it in his own

14    papers.  First of all, it was confusing when counsel filed

15    his own retention application.  It wasn't clear exactly who

16    paid counsel's first retainer -- prepetition retainer.

17          And I believe it says advanced -- some sort of

18    advance from a loan, a protective advance.  So when we dug a

19    little deeper, I think counsel filed the amendment and

20    explained the nature of that.

21          THE COURT:  The lender (indiscernible).  It was

22    clear to me when he filed it.

23          MR. YANG:  But the problem is that that money,

24    that loan was created right before the filing.  So that

25    might be an issue in terms of preference.  So I spoke to a

1    counsel yesterday with respect to whose idea was it to get

2    that loan and I think counsel blatantly stated to me was

3    Blue Castle's idea.  It wasn't the Debtor's idea.

4            Now, counsel had previously represented Blue

5    Castle.  So -- and Blue Castle is a creditor in this case --

6    (inaudible) credit in this case.  And the transactions in

7    questions right now of the sales of the shares or interest

8    of the Debtor -- to the Debtor that became an issue.  That

9    back to the original question, was that sale proper?  And

10   the propriety of the sales in question, that means that

11   that's a possibility.  I'm not saying for sure until Your

12   Honor has decided.

13           THE COURT:  Isn't that what he's bringing Rosen in

14   to do?

15           MR. YANG:  But Your Honor --

16           MR. NAGI:  Yes, Your Honor.

17           MR. YANG:  -- if that's the case, why don't we

18   have just Rosen to come in to represent the Debtor?  Why do

19   we create additional --

20           THE COURT:  The Debtor wants him.

21           MR. YANG:  No, I get it.  Debtor wants whatever

22   the Debtor wants.  But is it appropriate?  Because now

23   counsel is wearing essentially two hats, represented Blue

24   Castle before.  I don't know what the relationship right

25   now, since Blue Castle (indiscernible) creditor in this

1    case.  If the sale itself wasn't proper, the transfer wasn't

2    proper, there was no Debtor and maybe -- maybe -- Blue

3    Castle decided two counsels first.

4            THE COURT:  If Blue Castle and the Debtor are

5    affiliates, Blue Castle wants Nagi to represent their

6    affiliate, if they own it, as the Debtor.  Creditors of that

7    case, they've still got to apply for a fee ultimately, but

8    quite frankly, a third party -- well, no, they couldn't.

9    They have to apply for a fee.  Mr. Nagi is a sophisticated

10   bankruptcy lawyer.  We know that ultimately it has to come

11   in front of me.  We can review it.  But this is a house.  At

12   the end of the day, this is a house.

13           I think I would prefer to have -- I think your

14   objections are well taken. All right?  Technically speaking.

15   As my (indiscernible) say, I don't want to be bound by all

16   the technicalities.  They've done an enormous amount of

17   work.  They're a sophisticated firm.  They're willing to

18   bring co-counsel in.  the Debtor is largely -- major

19   creditor of the Debtor is the bank for the entity that's the

20   mortgagee.  They want a successful plan so they don't have

21   to go through estate foreclosure proceeding, because that's

22   the only way they can clear title.

23           So my feeling is the party that has the most

24   incentive to come out of this with a confirmed plan and all

25   its consequences is the mortgagee, and so I have no -- I

1   mean, I understand it and if it becomes a real issue later

2   on, we can bring it up again.

3          MR. YANG:  Can I just make one last --

4          THE COURT:  Sure.

5          MR. YANG:  -- Your Honor?  The problem is that

6   because -- I get it.  I think Blue Castle want -- I think

7   the Debtor wants the same thing, if the Debtor -- to get the

8   sales approved.  But if counsel represent both parties, so

9   what (indiscernible) general unsecured creditors?  If

10  counsel represents the interest of Blue Castle alone or to

11  the estate, because we are talking about close to $6 million

12  unsecured debt.

13         THE COURT:  But any of those creditors come

14  marching in here and object.

15         MR. YANG:  Well, Your Honor, that's why --

16         THE COURT:  The last thing they want me to do is

17  blow this plan up.  They don't want a seven and they need a

18  confirmed plan, in my view, because they need clean title.

19  They can't sell it to anybody.  That's the only card he's

20  got.

21         MR. YANG:  I get it, Your Honor.  (indiscernible),

22  but this firm is not the firm.  Rosen can come in represent

23  the Debtor.  We don't have any problem.

24         THE COURT:  I think you make a valid argument and

25  in many cases that we've seen, I would agree with that.  I

1    think the particularities of this case lead me to conclude -

2    - unless somebody can convince me otherwise -- in the best

3    interests of creditors of the case, I don't think there's

4    anybody who's going to be able to generate, who has an

5    interest in generating a confirmable plan more so than the

6    mortgagee, as odd as that may sound.

7             It's not that they just can't -- I'll lift the

8    stay tomorrow, if they want, in a sense.  But they don't

9    want to be in state court.  They were there.  And three

10    years later, they don't need something that ends up to be

11    clean title and hold it for three years.  It's a house, not

12    a commercial building.

13             So I, my -- the incentives here, unless Mr. Nagi

14    can convince me I'm wrong, They're willing to pay the most.

15    I think they are willing to pay the most, give up the most,

16    because they know what they want.  And another firm would

17    end up having to deal with him anyway, as counsel or co-

18    counsel to the mortgagee and we'd end up in exactly the same

19    thing.

20             They hold the keys to the -- the estate has

21    nothing other than a house, subject to a big lien, subject

22    to other liens on it.  Now, there are people who believe the

23    order of liens may be different.  There are -- the

24    Gallaghers believe they own the equity, but I'm not sure

25    what to do with the equity, if it's subject to all this debt

1    anyway, where would they go with it?  But they know that.

2              So all I'm trying to do is make -- create an

3    environment where these guys aren't running in for the

4    money.  They have no emotional attachment to (audio glitch)

5    reverse.  They do have an emotional attachment because they

6    don't want to get sued by everybody else.  That's the fight.

7    Has nothing to do with these unsecured creditors at the

8    moment.

9              And I think they're better equipped to do it.  I

10   may be wrong and I think legally, if I look at the statutes

11   strictly, you probably are right.  You're probably right.

12   But unless anybody else wants to object to this, I think I

13   know what I'm going to do, but I'll let anybody speak.

14             MR. SASLOFF:  Your Honor, I would like to say one

15   thing because I've been in this case.  I've been the

16   Gallaghers' (audio glitch) the local attorney, a lot of

17   their business practice.  So I dealt with this case from the

18   prior (audio glitch) creditor to when they sold it to them

19   and I was trying all along -- I just want to say something.

20   First off, the foreclosure case that they did start with a

21   federal court, Judge -- it's not a state court case, so it

22   does have an accelerated -- potentially accelerated

23   possibilities.

24             Number two is (audio glitch) represented (audio

25   glitch) we'll call, in connection with selling the equitable

1    interest (audio glitch) interest.  They, in that sale, they

2    demanded a minimum bid of a half a million dollars and

3    required people to put down (audio glitch) or they couldn't

4    bid.  They did -- I didn't see the credit for the $500,000

5    that should have been given pursuant to that sale.

6           THE COURT:  Wait a second.  Are you saying in the

7    sale of the UCC interest there's a minimum bid of 500?

8           MR. SASLOFF:  Correct.

9           THE COURT:  Why did the paper say you only paid

10    100?

11           MR. SASLOFF:  I don't know why.

12           THE COURT:  I'm not asking you.  I'm asking him.

13           MR. NAGI:  It doesn't say that there was a minimum

14    bid of $500,000 and the secured creditor bid $1,000.

15           THE COURT:  All right.  All right, well, let's --

16    don't try to litigate it in front of me.

17           MR. SASLOFF:  I'm not, I'm not.  So not only does

18    Mr. Nagi's firm do that, then Mr. Nagi's firm goes and

19    becomes the attorney in the actual underlying foreclosure

20    case.  And to become the attorney, he filed a notice of

21    appearance in that case (indiscernible) consent to change

22    counsel --

23           THE COURT:  Foreclosure of what?

24           MR. SASLOFF:  Foreclosure, in the underlying --

25           THE COURT:  Of the shares or of the property?

1          MR. SASLOFF:  No, of the property.

2          MR. NAGI:  No, that is not correct, Your Honor.

3          THE COURT:  Let him finish.

4          MR. NAGI:  Yes, Your Honor.

5          MR. SASLOFF:  I understand he filed a consent to

6     change attorney and entered into that case then withdrew it

7     when he found out that he's just wearing too many hats.  He

8     pulled himself out of that, put Mr. Hasbani back on it.  I

9     don't know.  I don't know exactly when.  My understanding is

10    that's what he did in that underlying case.  He then filed

11    the bankruptcy case.

12          The problem is that -- I saw the Supreme Court

13    case to get a reduction in what they were claiming was owed

14    because they didn't make all the disbursements.  This

15    particular Debtor does not owe what they're claiming, but

16    they don't care.  They're not -- they don't want to discuss

17    that and that affects my clients tremendously because it

18    lowers the amount that they actually owe.  They've accrued

19    24 percent interest on those funds that were not disbursed.

20          THE COURT:  Who's your client?

21          MR. SASLOFF:  Well, I'm talking about the

22    Gallaghers when I was their counsel earlier, Your Honor,

23    before I got removed.  I was with --

24          THE COURT:  Who did you represent -- who did you

25    represent in the foreclosure action?

1          MR. SASLOFF:  In the foreclosure action, it was

2     Nicole Gallagher and Mark Gallagher and the entity -- and

3     Wickapogue.

4          THE COURT:  So you have the same issue you're

5     claiming he has.

6          MR. SASLOFF:  Well, I -- they removed me.  They

7     sent me a letter saying you're no longer counsel.  I --

8          THE COURT:  You were.

9          MR. SASLOFF:  Well, I was also counsel in the --

10          THE COURT:  How do you distinguish you from him?

11     How do you distinguish your problem from what you claim his

12     problem is?

13          MR. RAIMOND:  He's not seeking to be retained

14     post-petition, Your Honor.  That's the distinction.

15          THE COURT:  Okay.

16          MR. SASLOFF:  That's, all I'm trying to say is

17     that I just -- they're not fighting (indiscernible).  We --

18          THE COURT:  Does anybody know this case better

19     than you two?

20          MR. SASLOFF:  Not better than me.  Perhaps Mr.

21     Hasbani -- I would say, the both of us.  Yes.  By far.

22          THE COURT:  Can we not run up enormous bill trying

23     to figure out who represents a house?  Because the more

24     monies we run up on this, the less the chances of this

25     gentleman getting the deal he wants.  As their money

1    increases, their willingness to do anything for them

2    decreases.  (audio glitch) already.

3              MR. SASLOFF:  Your Honor --

4              MR. RAIMOND:   -- in those underlying cases when

5    they submitted a payoff close to $200,000, basically running

6    a sale and opposing a motion for me.

7              THE COURT:  You haven't been in the bankruptcy

8    courts long enough.

9              MR. RAIMOND:  I don't make any, you know, I mean,

10   that's just that kind of -- it just doesn't, my modeling.

11             THE COURT:  A million dollars for single asset

12   real cases, years ago, were not exorbitant.  So it's a

13   different world because the complexities of the arguments --

14   and that's my point -- there's a intersection here in what

15   you do for a living and you're very good at it in the real

16   estate world, what they do for a living -- not saying you

17   don't know real estate -- and the bankruptcy world.  An art

18   into itself, bankruptcy real estates.  Complicated world.

19             We need people who understand it because this is a

20   -- even though it's a house, it's a lot of money and a lot

21   of peripheral issues.  There are going to be tax issues that

22   affect his clients, no matter how you resolve this.  I want

23   people to understand that, otherwise I'm going to end up six

24   months down the road and somebody say, you know, I have this

25   problem.  I told you about that six months ago.

1          I think, gut tells me, you Sasloff  -- phone

2     ringing here.

3              MAN:  Sorry.

4              THE COURT:  And Mr. Nagi are the best parties to

5     do it.  Mr. Yang is right, legally.  I just want this case

6     to be resolved as expeditiously, protecting everybody's

7     rights (audio glitch) I can.  That's my only point.

8              MR. RAIMOND:  Then they just have to be honorable

9     about the money that was not disbursed and the interest that

10    they compiled on that money.

11             THE COURT:  Honorable is a standard.  I assume

12    everybody that appears in my courtroom, otherwise --

13             MR. RAIMOND:  This case that should --

14             THE COURT:  Sir, I'm not disparaging state court.

15    Just don't do that here.  Every lawyer -- my assumption is

16    every lawyer who appears in front of me tells me the truth,

17    is honorable.

18             MR. RAIMOND:  I didn't mean lawyers.  I mean

19    clients, really, Judge.  I didn't mean lawyers.

20             THE COURT:  Not saying about clients, but I am

21    saying that about the lawyers.

22             MR. RAIMOND:  Okay.

23             MR. SASLOFF:  Your Honor, thank you.  Robert

24    Sasloff.  We had joined in the U.S. Trustee's objection and

25    doing a lot of debtor cases, as Your Honor is aware of.

1    We're often held by the U.S. Trustee's Office and Courts to

2    the standard about the conflict (indiscernible).  So that

3    was our issue is that we've been on the other side.  We've

4    been in Mr. Nagi's position and his firm where people have

5    objected to our retention for the same exact, similar

6    reason.

7            Our concern in this case, if we're litigating, was

8    that his firm had been on the other side and it just the

9    appearance of that seems almost inescapable conflict.  If

10   there could have been a cooperative effort, which you say

11   Mr. Nagi and I have tried our best to get there and I think

12   counsel for the secure creditor on the phone Mr. Hasbani has

13   also tried to get there, but we're not there yet.

14           The hope was if we could have gotten there, we

15   would have been more than happy to have reduced the cost,

16   have Mr. Nagi's firm stay in as counsel because we know what

17   they can do, and we would have let the Court deal with any

18   issues as to conflict as Your Honor stated with regard to

19   the final fee applications, which we would not have -- our

20   intention was not to have a (indiscernible) at that point.

21           The problem is, we didn't get as far as we needed

22   to and that's why we joined with the U.S. Trustee's Office,

23   because our concern realistically is, if we're right regard

24   to the objections to the secured creditor's claim, we have

25   the confidence that the firm would look into those

1    objections and agree with us.  And normally you would think

2    that a Debtor would like to pay legitimate creditors their

3    rightful amount, not an inflated amount.  That --

4              THE COURT:  Is your issue that if -- and I won't

5    say if -- you believe you have legitimate issues.

6              MR. SASLOFF:  Yes, Your Honor.

7              THE COURT:  Okay.  Do you believe that Mr. Nagi's

8    firm, because of their history in this case cannot fairly

9    adjudicate those issues with you on behalf of the Debtor?

10              MR. SASLOFF:  Can't affirmatively say that they

11    won't, but they have not shown that they have a desire to.

12    And I'll go as far as to show that in the responsive papers

13    they filed --

14              THE COURT:  The fact that he hasn't cut a deal is

15    (indiscernible).

16              MR. SASLOFF:  It's not even that.  It's also the

17    idea that they continue to -- the papers they filed just the

18    other day, Your Honor, had the declaration of the secure

19    creditor attach to it.  Secured creditor certainly could

20    file that on its own in support of the Debtor's reply using

21    its own counsel.  But the picture is rather murky at times.

22              And if we're going to be held to -- if all of us

23    as the bar are going to be held to a certain standard, the

24    idea was that standard needs to be clear cut so everybody

25    knows what the rules are.  And Your Honor said, the U.S.

1   Trustee may be right on the law, but this may be a case that

2   we should -- and I don't disagree with Your Honor, that if

3   the parties are cooperative keeping Mr. Nagi's firm in makes

4   the most sense because I think two of us as bankruptcy

5   attorneys with Mr. Hasbani could finish this case relatively

6   quickly and not, you know -- for the record, Your Honor --

7            THE COURT:  I mean, I understand what you're

8   saying, but I'm not going to require or consider the fact

9   that whether Mr. Nagi's firm, as you put, will help you get

10  a deal done is -- motivates whether I keep them in or not.

11  They're -- look, I don't see any reason.  You're going to

12  bring Rosen into this case?

13           MR. NAGI:  Yes, Your Honor.

14           THE COURT:  If Rosen comes in, Mr. Yang, we can

15  monitor the case.  To the extent there are issues that you

16  believe aren't being fairly handled by Mr. Nagi.  Everybody

17  -- or you should know Mr. Rosen.  He's a capable lawyer.

18  He's been around forever.  He can deal with it.

19           MR. GOLDWASSER:  Your Honor, this is David

20  Goldwasser, the CRO.  I don't mean to interrupt.  I

21  apologize that I'm not in person, but I think what everybody

22  --

23           THE COURT:  That's fine.

24           MR. GOLDWASSER:  I think what everybody's missing

25  is that I was hired to be the CRO in order to run the case.

1    I know all of the parties.  I've dealt with all the parties.

2    And I'm here to be that independent monitor and the

3    independent person to run a case.  Mr. Sasloff and all of

4    his counsel knows me for many, many years.  Mr. Nagi knows

5    me for many, many years.  And I'm here to run the case.

6    It's not attorneys running the case.  This is me running the

7    case.

8            THE COURT:  But the -- Mr. Goldwasser, Mr.

9    Goldwasser.  The only thing in front of me is the attorneys,

10   not you.

11           MR. GOLDWASSER:  Well, I -- I'm just --

12           THE COURT:  Independently, we know -- listen to

13   me.  We know that you will give direction and have

14   experience in that as the "client" to Mr. Nagi.  Their

15   objection is that Mr. Nagi from a legal standpoint shouldn't

16   be the party you're giving direction to.  It's not being

17   critical of you, and nobody's arguing, he's making the

18   decisions.  The role of a lawyer is the issue.  My

19   inclination is to let him continue to do that.  If you as

20   the party managing the Debtor at this point, wish me not to

21   hire him, fire him.  I'll let you fire him.

22           MR. GOLDWASSER:  I wish you to keep him and bring

23   in Mr. Rosen to be the conflicts counsel, as has been done

24   in the past and I think that would be the best solution.

25   I'm agreeing with you, Your Honor.  I just wanted to put in

1   that, you know, there is a client.  It's not just the

2   attorney.  That was my point, and I apologize I'm not in

3   person.

4           THE COURT:  I did not minimize your role.  Lawyers

5   are not the clients, luckily for everybody.  So, does

6   anybody else have a view on this?  I think I'm going to

7   grant the retention of the firm with the caveat that the

8   Rosen firm, because that's the part -- or another firm, but

9   Rosen firm seems to be the identified party -- be brought in

10  as conflicts counsel.  Mr. Nagi's firm, along -- in

11  conjunction with other folks including Mr. Yang can define

12  what that means.

13          I don't want it over lawyered.  I don't want two

14  law firms working on the same thing.  But if an issue

15  appears outside the scope of what you think may be a

16  conflict and Trustee's office and others feel it should be

17  handled by Mr. Rosen, either bring it in front of me or

18  reach a deal.  I will leave the Offit firm in this.  I will

19  retain them.  I think they have done a credible job, a good

20  job identifying the issues.  I think in the end, this case

21  has got to be figured out how to settle it.  It will get

22  settled one way or another.

23          The only issue is how much pain we have to go

24  through between here and now -- here and then.  Everybody

25  knows that's the answer here.  So I think these are the best

1    parties to do it.  That's without precedent in the future,

2    Mr. Yang, if the same sort of issue comes up, I could very

3    well roll a different way.  But I think in this case,

4    especially with the inclusion -- and I think it was required

5    -- of conflicts counsel, we can make it work and minimize

6    the costs, which I think is the goal of everybody.  We'll

7    maximize the return for the creditors, which is really the

8    goal.

9              MR. YANG:  Thank you, Judge.

10             THE COURT:  All right, so that takes care of that

11   one.

12             MR. NAGI:  Thank you, Your Honor.  I think the

13   simplest thing to go to next would be the broker retention

14   motion, Your Honor.  I can say that Mr. Sasloff did file an

15   objection to the rate.  As part of the negotiations and the

16   discussion that we had, Mr. Sasloff had -- I spoke with Mr.

17   Corbin who's on the line who indicated that he would agree

18   as -- to drop the rate from 6 percent to 5 percent even

19   though 6 percent is the standard for houses of this type.

20             Mr. Sasloff indicated that was -- that worked with

21   him.  I think that amongst all of the conversations that

22   might have gotten lost when he filed his pleadings, I spoke

23   with him and that's -- he can represent to the Court how it

24   feels, but I believe that with that 5 percent reduction,

25   there is no objection to retaining Mr. Corbin as the broker.

1           THE COURT:  He is with what firm?

2           MR. NAGI:  So that's the other thing I need to

3    tell Your Honor.  So he was with Rosewood, but he hasn't

4    done any work on -- in this case, and about three weeks ago,

5    maybe more, Mr. Corbin can correct me -- he opened up a

6    different firm.  The entire group that he worked with from

7    Rosewood moved to North Point Real Estate Group.  So we

8    would file an amended order which we would provide to Mr.

9    Sasloff and Mr. Yang to simply change the name of the

10   entity.  Same people.

11          THE COURT:  He just moved his group to a different

12   brokerage firm?

13          MR. NAGI:  He started his own, Your Honor. That's

14   correct.

15          THE COURT:  Do they have any conflict in this

16   case, that new firm?

17          MR. NAGI:  No.  It's the entirety of the

18   bankruptcy group from Rosewood.

19          THE COURT:  But somebody's holding the license.

20   He's part of another group, isn't he?

21          MR. NAGI:  No, I believe it's --

22          THE COURT:  He holds the license himself?

23          MR. NAGI:  Mr. Corbin's on the phone.  He --

24          THE COURT:  No, no, what's the relationship

25   between you and Northwood or whatever that is.

1           MR. NAGI:  North Point.

2           THE COURT:  North Point.

3           MR. CORBIN:  Your Honor, this is Greg Corbin.  So

4    North Point is a firm that we started, as Mr. Nagi (audio

5    glitch).  We have a broker's license and we are now

6    operating as the team that was from -- previously from

7    Rosewood has started its own firm, you know, with the team

8    members.

9           THE COURT:  You guys have your own license, then?

10          MR. CORBIN:  Correct.

11          THE COURT:  -- have any issues with this?

12          MR. SASLOFF:  Sorry, Your Honor, Robert Sasloff.

13   As we've stated in our papers, we have no objection to the

14   Corbin group's original retention and I believe that Mr.

15   Corbin and his group would do well.  We were informed by Mr.

16   Nagi as well as by Mr. Corbin that he was moving.  We would

17   have no objection to the firm.  We had objected to the rate.

18   We would have liked to have known before coming today that

19   they had agreed to the 5 percent.  We filed our papers

20   suggesting the number should have been 4 because that's

21   actually the standard for housing --

22          THE COURT:  You'd take 5?

23          MR. SASLOFF:  Take 5, Your Honor, because you know

24   -- the idea is, we do agree that the property needs to get

25   marketed.

1           THE COURT:  You won the argument.  Don't go on.

2           MR. SASLOFF:  Thank you, Your Honor.

3           THE COURT:  You'll do it at 5, Mr. Corbin?

4           MR. CORBIN:  Yes (audio glitch) number.

5           THE COURT:  That was sort of a yes or no.  will

6     you do it at 5 percent?

7           MR. CORBIN:  Yes, I will, Your Honor.

8           THE COURT:  Grant the retention at those numbers.

9     Submit that proposed order, people could see it before I

10    sign it.

11          MR. YANG:  Your Honor, I hate to do this.  Can I

12    be excused, because I have to be in front of Judge Trust at

13    11:30 for --

14          THE COURT:  You always favor him.

15          MR. YANG:  -- contested matter, and I think --

16          THE COURT:  (indiscernible) pleasant courtroom

17    than mine.

18          MR. YANG:  I was here first, Judge.

19          THE COURT:  Go ahead.

20          MR. YANG:  Since ten o'clock.  Thank you, Your

21    Honor.

22          MR. NAGI:  Your Honor, there's also a bar date

23    motion that remains unopposed.  I believe that we had asked

24    for 45 days, but this was filed May 2nd and so, if we could

25    perhaps -- I would like to do it in 30 days, if the Court

1    would approve.  If there is an objection to that, then we

2    could stick with what we did.

3            THE COURT:  Does anybody object to that?  Hearing

4    no objection, the Court will grant the motion.

5            MR. NAGI:  Thank you, Your Honor.  And then

6    there's also -- I'm just --

7            MR. HASBANI:  Sorry, Your Honor.  Rafi Hasbani

8    from -- behalf of the creditor Blue Castle.  Is Your Honor

9    granting the 30 day or what's in the --

10           THE COURT:  That's what counsel requested.  L

11           MR. HASBANI:  Okay.  I'm just trying to calendar

12   because this one actually affects me personally, so --

13           THE COURT:  Okay.

14           MR. HASBANI:  Want to calendar it properly.  Thank

15   you.

16           MR. NAGI:  And we can work with that.  If

17   someone's on vacation, we'll move it backwards.  We'll move

18   it out.  That's not an issue, Your Honor.

19           MR. HASBANI:  Thirty days is fine.  Just wanted to

20   calendar it properly.

21           THE COURT:  Thank you.

22           MR. NAGI:  There's also a cash collateral motion

23   that's on, Your Honor.  It's unopposed.

24           THE COURT:  Where is the cash coming from?

25           MR. NAGI:  It's -- it was money that was provided

1    to maintain the property, from the lender and it was

2    provided to the Debtor and the Debtor is holding that money.

3    And so the cash collateral relates to that.

4              THE COURT:  No, there was a loan to the Debtor.

5    Now want the Court to approve, I guess, add it to your

6    secured debt.  I mean, there's no money generated at this

7    point.

8              MR. NAGI:  There's no money generated at the

9    property.  That's --

10             THE COURT:  It can't be cash collateral because

11   there is no cash collateral.  What you're arguing is that

12   the money that was advanced by the mortgagee to the Debtor

13   pre or post -- I guess it had to be prepetition.

14             MR. NAGI:  Prepetition.  Yes, Your Honor.

15             THE COURT:  Prepetition.  You now want an order

16   saying what about those funds?

17             MR. NAGI:   That it's the lender's cash

18   collateral.

19             THE COURT:  Where -- is the fund still sitting or

20   did you spend it?

21             MR. NAGI:  No, they're sitting in the Debtor's

22   account.  It's -- about $500 have been spent.

23             THE COURT:  And how much is there?

24             MR. NAGI:  $22,000, I believe.

25             THE COURT:  Debtor can -- it's the Debtor's asset.

1    It can spend it.  If the lender doesn't object, the Debtor

2    can spend it on the ordinary course expenses.  I don't --

3    not sure I'm -- what do you want me to do?

4            MR. NAGI:  Perhaps let me think about it and we

5    could table that motion --

6            THE COURT:  -- say that money is part of your

7    loan.

8            MR. NAGI:  Your Honor -- look here and make sure

9    that this is --

10           THE COURT:  You want that money repaid?

11           MR. NAGI:  Ultimately -- I know the lender -- no.

12   I think that what the lender wants is to have that money

13   deemed to be its cash collateral.

14           THE COURT:  Cash collateral is between a lender

15   and a mortgage -- and the Debtor.  Oftentimes if it's -- the

16   lender is not priming anybody, nobody cares.  Lender gave

17   $22,000.  If that becomes part of the secured loan, then you

18   prime everybody who's junior including the unsecured.  Comes

19   in as a gift, it's just subject to the unsecured.  I assume

20   you want it in the first bundle of money.

21           MR. NAGI:  That's correct, Your Honor.

22           THE COURT:  Anybody object to that?  It's 22

23   grand.

24           MR. SASLOFF:  I don't know if it was -- I mean, as

25   counsel to the Gallaghers, I don't really have an objection

1    to cash collateral, but I don't think it was presented that

2    way.  I don't know if any of the junior (audio glitch) would

3    have an objection if it's viewed that way.  Now, that being

4    said, Your Honor, part of the negotiations between my

5    clients and Debtor was also for some money to flow that

6    would go into the estate.  So having a cash collateral order

7    in place probably does make sense.

8            THE COURT:  I'll tell you what I'll do.  I'll

9    grant the motion for cash collateral, but subject to you

10   reviewing the form of order you submit with Mr. Yang and the

11   other parties.

12           MR. NAGI:  Yes, Your Honor.

13           THE COURT:  I don't want to inadvertently create

14   priorities to money that shouldn't get it and I don't want

15   to stop the flow of money coming in that properly should

16   prime other people.  They want to put it up, let them put it

17   up.  But if your client is putting up new money or money

18   into this to preserve its lien, nobody can put it up ahead

19   of them.  They're the only party.  So just work out the

20   language.  The Court will agree then.

21           MR. NAGI:  Yes, Your Honor.  The next motion is

22   really the substantive motion, the substantive motion in two

23   parts that is before Your Honor.  We've had a very

24   successful day in moving this case along.  I know that the

25   Court likes settlement.  We -- I'm prepared to argue the

1    motion.  If the Court would like to hear argument on it, I

2    think our points are straightforward.

3              THE COURT:  Let me ask you this.  Gallagher -- the

4    issue in front of me -- I can't resolve the ownership issue

5    today.  You can argue it and I -- you know, I'd like to hear

6    some argument on it, but I can't resolve that today.  I can

7    resolve the turnover.  And to me, your argument is this

8    Debtor owns a house, property of the Debtor is a house in --

9              MR. NAGI:  Southampton.

10             THE COURT:  Southampton.

11             MR. NAGI:  (indiscernible).

12             THE COURT:  It has a value, monthly value rented

13   of X.  I mean, people have agreed on that.  Mr. Gallagher

14   and another gentleman plan to occupy that house for a number

15   of months, I guess at least prepetition, but I only care

16   about from the petition date on (audio glitch) months now.

17   I understand they pai nothing to the Debtor (audio glitch)

18   to the Debtor, the occupancy of the Debtor's asset.

19             Turnover proceeding to me is either they pay or

20   they leave.  Now, they can chase them for what they did do

21   if they leave and that's in different action.  But what's in

22   front of me, that's a simple question, which is somebody is

23   utilizing an asset of this Debtor -- whoever owns the Debtor

24   -- because I'm looking out for the benefit of the creditors

25   of the Debtor, not the equity owner of the Debtor.

1        Those creditors are having an asset that they have

2    an interest in and the secured creditor as well as the

3    unsecured and junior lien holders being utilized by a third

4    party without paying.  You can't do that.  I guess the issue

5    is where do we stand on Mr. Gallagher and Michael -- I don't

6    know how to pronounce it.

7        MR. NAGI:  Mangiaracina.

8        THE COURT:  Mangiaracina offering -- if there is

9    one on the table -- pay the use and occupancy of this space

10   from whatever point Debtor's counsel wants to argue they

11   should pay it.  That negotiation (audio glitch) Debtor's

12   counsel on behalf of the Debtor or Mr. Goldwasser --

13   reminding me he's the client -- Mr. Goldwasser seems

14   acceptable.  To me, that's a business decision.  Tell me on

15   behalf of the creditors, you're not asking them to pay

16   anything, I may have a problem with that, but that's -- at

17   this point, it's a business decision.  What are you telling

18   me?

19       MR. NAGI:  What I can tell you is there was a

20   three-week period from the last time that we were in front

21   of the Court until now.  As a result of -- after the last

22   hearing, we got a combined offer from the Gallaghers.  The

23   offer was  -- and there was a gating issue which was a

24   discount from the lender and because we couldn't get past

25   that, I think that we can get there fairly quickly if it's

1    just -- if we're just using --

2            THE COURT:  I don't want to hear settlement. All I

3    want to know is, what are you asking, if anything, for use

4    and occupancy in your turnover motion?

5            MR. NAGI:  In the turnover motion, Your Honor, I

6    could tell you.  The turnover motion seeks for, we'll start

7    in April.  The case was filed March 28th, $60,000 for April

8    and May, $90,000 for June, and $150,000 for July.  And

9    that's based upon an order entered --

10           THE COURT:  Tell me the total.

11           MR. NAGI:  Your Honor, I didn't actually add that

12   up.  Hold on a second.  I believe it's $360,000 is what the

13   total is.  I'm going to do the numbers.

14           THE COURT:  So, on behalf of the Debtor, you

15   believe that the Debtor is owed by Mr. Gallagher and Mr.

16   Mangiaracina 360-plus thousand, give or take a dollar?

17           MR. NAGI:  Yes.  And I'm going to do the math

18   right now, but I believe that that's what --

19           THE COURT:  So bid is that -- (indiscernible) is

20   that.  What's the bid?

21           MR. SASLOFF:  Your Honor, we had made an offer,

22   and again, if you don't want to do into settlement

23   discussion, there's no point in telling you the number.  But

24   we had made an offer that's not been countered or rejected

25   because I don't think the parties -- and the Debtor in those

1    discussions with us agreed, it's not -- it wasn't looking to

2    market rate of rent for this house for the summer because it

3    wanted to sell the property and if it wanted to sell the

4    property, it didn't want anybody on the property.

5                THE COURT:  He's asking for 360-plus --

6                MR. SASLOFF:  We substantially a different number.

7                THE COURT:  Just give me a number.

8                MR. SASLOFF:  We had offered for a period of three

9    months, a total of $60,000.

10                THE COURT:  The spread is between -- the offer is

11   60 and the ask is 360.

12                MR. SASLOFF:  Plus, we had also offered to

13   maintain the property, pay the expenses for certain

14   maintenance, and to bring the property ready for sale by

15   getting the final C of O issued, which is going to cost

16   another expenditure of funds as well.

17                THE COURT:  Well, my instincts are that the

18   property is worth -- is monthly rental is considerably more

19   than $60,000 for three months.  Right?

20                MR. SASLOFF:  It's --

21                THE COURT:  Listen to me.  I'm not interested in

22   the rest of the deal.  That's up to you guys.  Only motion

23   I'm dealing with is what do you have to pay, what's the fair

24   market payment that you owe this debt -- your client?

25                MR. SASLOFF:  That's the issue that I was trying

1    to raise, Your Honor.  I don't think that's the measure that

2    we should be looking at because the Debtor wasn't --

3                    THE COURT:  Well, then you and I disagree, but I

4    win.

5                    MR. SASLOFF:  Of course.  But I think the issue

6    that we were trying to --

7                    THE COURT:  Stop.  Stop.

8                    MR. SASLOFF:  Your Honor, I don't know what deal

9    Mr. Gallagher was making with them to -- what they were

10   going to do.  I know that (audio glitch) Robinson Brog firm,

11   but I know that my client has had a lease for the last

12   (audio glitch).  My client pays $2,000 a month in cares for

13   the property.  (audio glitch) the property.

14                   THE COURT:  Who's your client?

15                   MR. SASLOFF:  Michael (audio glitch).

16                   THE COURT:  What happened to Gallagher?

17                   MR. SASLOFF:  Well, Gallagher is my client

18   (indiscernible), but I thought that they took over when they

19   represent --

20                   THE COURT:  Sir, this is a very simple thing.  All

21   right?  We're not landlord-tenant.  I have a Debtor who owns

22   an asset, (audio glitch) no money.  People have been living

23   in that facility.  This could be a $100 house, a $1,000

24   house, a $10,000 house.  It has a value.  If you're telling

25   me that you have a binding lease, only requires you to pay

1   $2,000, which I don't think you paid anyway, but then that's

2   your defense to this and I may have to have a hearing on it.

3           MR. SASLOFF:  They're aware of it, Your Honor,

4   because --

5           THE COURT:  I don't care they're aware of it.

6           MR. SASLOFF:  -- the sheriff --

7           THE COURT:  Is there a piece of paper signed by

8   this Debtor?

9           MR. SASLOFF:  Yes.

10          THE COURT:  And your client which is called a

11  lease, showing a term and a payment per month?

12          MR. SASLOFF:  Yes.

13          THE COURT:  When was that written?

14          MR. SASLOFF:  Think it was written (audio glitch)

15  years ago.

16          THE COURT:  And what's the term of it?  How long

17  does it go?

18          MR. SASLOFF:  I believe there is approximately

19  another ten months (audio glitch) remaining.

20          THE COURT:  Have you seen this?

21          MR. NAGI:  I have not, Your Honor.

22          MR. SASLOFF:  It was tendered to the Southampton

23  Police during an issue that was going on and they kept

24  changing the locks at the property.

25          THE COURT:  Well, let me give you a suggestion.

1    (audio glitch) Mr. Nagi the lease.  Your position is, the

2    Court is bound and the Debtor is bound, some theory, to that

3    lease.  That's an argument.

4            MR. SASLOFF:  (indiscernible) a lot of effort for

5    that place to take care of it.  So --

6            THE COURT:  No, no, no, no.  Really simple.  Is or

7    is not a binding lease.  If there's a lease, look at it,

8    read it.  (audio glitch) Nagi and anybody else will have an

9    opportunity to read it.  You'll file a response to his

10   motion to turn over.  If your defense is that at least this

11   gentleman, a binding lease that's enforceable that allows

12   you to stay there for $2,000 a month (audio glitch).  They

13   have that.

14           MR. SASLOFF:  (indiscernible).

15           THE COURT:  But seems to be a surprise to Mr.

16   Nagi.

17           MR. SASLOFF:  It shouldn't be a surprise.

18           MR. NAGI:  I've heard a lot about it, Your Honor.

19   I have yet to see it.  It was not put it.  It has not been

20   before this Court, so I've only heard of things.

21           THE COURT:  Now, spoiler alert.  You're telling me

22   this lease exists and you've seen it?

23           MR. SASLOFF:  No.  No, Your Honor.  My

24   understanding, it was tendered to the Suffolk County Police

25   Department.

1      THE COURT:  Let's try this again.  Have you seen

2    it?

3      MR. SASLOFF:  I don't recall seeing it, Judge.  I

4    recall the issue --

5      THE COURT:  No, no. People recall (indiscernible).

6      MR. SASLOFF:  Judge, I --

7      THE COURT:  Listen.  That's not the way it works.

8    Question, simple answer.  As -- are you telling the Court as

9    an officer of the Court that you have read and seen a lease

10   (indiscernible) the Debtor to accept $2,000 a month rent?

11     MR. SASLOFF:  No, Judge, I don't think I saw it

12   because it was delivered -- tendered to the police and I was

13   speaking --

14     THE COURT:  You got 'til the close of business

15   today to give it to him.

16     MR. SASLOFF:  Again, Judge, my --

17     THE COURT:  If it doesn't say that, I'm not

18   holding you to it, because you're being honest.

19     MR. SASLOFF:  I'm just saying (indiscernible).

20     THE COURT:  Don't go beyond that.  I don't want

21   you (indiscernible).  Your client (audio glitch) fine.  That

22   lease as described by you (indiscernible) because you admit

23   you haven't seen it, will be delivered to Mr. Nagi, Mr.

24   Yang, and the appropriate parties by the close of business

25   today.  If that lease is not then the Court has no reason to

1    believe there is a lease.  Paper.  Ain't that hard to get.

2    Then the Court is going to enter an order, unless you guys

3    want an evidential hearing, using a number between 60 and

4    360 as to what's due and owing and will be due and owing

5    every month thereafter.

6            If I enter that order and those funds aren't paid,

7    your client will immediately vacate.  Client doesn't vacate

8    the house, and the state's marshals will assist in vacating

9    that house.  State court action (audio glitch).

10           MR. SASLOFF:  I will get the lease immediately.

11   You want it uploaded into the system?

12           THE COURT:  I would suggest you docket it, sure.

13           MR. SASLOFF:  Okay.  So then I'll forward it to

14   counsel, but I'll also docket it, but I'll (indiscernible).

15           THE COURT:  Make sure your client -- they may not

16   want you to.  I don't know.  Whatever that -- I don't know

17   if it's privileged.  I don't know why a lease would be

18   privileged. But Mr. Nagi and Mr. Goldwasser as the client,

19   if they're facing a -- they've asked me to give them

20   possession of property.  If you believe your client has a

21   legal right to that property, they want to see it as do I.

22   He has rights.  Client has rights.  But if it doesn't -- and

23   I'll know that by this afternoon -- then the Court will

24   issue an order.

25           Now, if you guys want, ask me if you want to have

1      an evidentiary hearing as to value or else let me establish

2      the value.  Which of those two choices do you want?

3              MR. HASBANI:  Your Honor, this is Rafi Hasbani

4      from Hasbani & Light on behalf of Blue Castle.  We -- in the

5      pending foreclosure action that's in federal court before

6      Judge Brown, I believe, we filed -- there was a rent

7      receiver appointed.  He filed a motion seeking rent for the

8      property.  No one ever produced the lease.  No one ever

9      objected to it.  No one came forward and said, we live at

10     this property and this is how much we're paying.  And the

11     judge already issued an order on that with regards to the

12     amount to be paid.

13             THE COURT:  I'm aware of what -- sir, I'm aware of

14     what Judge Brown has done.  Giving these gentlemen to close

15     of business today.  If it doesn't exist, then we'll know.

16     I'm not enforcing or dealing with Judge Brown and he's not

17     dealing with my orders.  Independent proceeding.  Turnover

18     proceeding.  Set forth what we're going to do.  My only

19     question that has not been answered, whether the parties now

20     want to rely on the Court to select a monthly payment based

21     on whatever I've read or you wish an evidentiary hearing on

22     that.

23             MR. SASLOFF:  My response, Your Honor, would be

24     that I want evidentiary hearing if it affects Mr.

25     Mangiaracina.  If it's something that the Gallaghers and --

```
 1              THE COURT:  Got it.  You got it.  Then we will
 2    have a hearing in person.  You will present witnesses.  They
 3    will be able to take any deposition they want on this issue
 4    prior to that and that will all be done within the next
 5    month.  Any determination of the Court will be retroactive.
 6    So nobody's saving any time.
 7              MR. SASLOFF:  You know, Judge, all I'm saying is
 8    that --
 9              THE COURT:  You got what you -- you have a right.
10              MR. SASLOFF:  Yeah, if he's got a lease, then I
11    think --
12              THE COURT:  Sir, I told you, you have a right.
13              MR. SASLOFF:  Thank you.  Your Honor, the only
14    issue that I want to just, straight out right now, is that
15    my father passed away on August 2nd and his affairs, I'm
16    leaving for Greece on July 13th and I'm arriving back on
17    August 6th.  I have to take care of many open matters over
18    there.  So I'm just letting you know that.  I'm not --
19              THE COURT:  How fast can you have an evidentiary
20    hearing?  I can do it next week.  Want to do it next week?
21              MR. SASLOFF:  I can't, Judge, I --
22              THE COURT:  Why?
23              MR. SASLOFF:  In order for me to leave for such a
24    period of time, it's like parting an ocean.
25              THE COURT:  Sir, I respect your problems.
```

1           MR. SASLOFF:  I have so many --

2           THE COURT:  Listen to me.  I respect your

3    problems.  You want the hearing.  He doesn't.  You want it.

4    I don't think you want it. You don't care.

5           MR. NAGI:  No, Your Honor, we -- I'd like to know

6    if he objects first.  Maybe they won't object and then --

7           THE COURT:  Talk to them.  Feel free.  Go outside

8    and talk to him.  Make him a different offer.  Sixty isn't

9    going to work, all right?  I'm determining that; 360 is his

10   number.  (indiscernible).

11          MR. RAIMOND:  Your Honor, this is Roger Raimond

12   from Leech Tishman Robinson Brog.  I just would like to

13   raise one issue.  The number 360 includes a July rent, which

14   we haven't gotten to yet.  So it's really a 210 number that

15   they've asked for, for the prior month's rent.

16          THE COURT:  Thank you.  I appreciate that.  But --

17          MR. RAIMOND:  One other thing is that there is an

18   offer for payment in kind in this case, Your Honor, to help

19   to bring the property to a higher value by clearing up some

20   issues and defects with the property.  That hasn't --

21          THE COURT:  Sir, whatever -- listen to me.

22   Whatever Mr. Goldwasser, Nagi, as the administrator of the

23   Debtor feels is a fair and deals is a fair and equitable

24   payment in the ordinary course of business, the Court won't

25   interrupt.  So if you reach an agreement as to that, that's

1    fine with me.  But there is no agreement, so I have to move

2    the ball.  And the way I'm doing that is I'm going to

3    establish a monthly rent they have to pay.  If the Debtor

4    himself argues, I would prefer something different and I

5    view that in the ordinary course, the Debtor wins.

6            You want to cut a deal, cut a deal.  Feel free to.

7    I'm just trying to protect the creditors, but it's Mr.

8    Goldwasser's determination as to whether it's in the

9    ordinary course and it's fair and reasonable.  He knows

10   that.  He's done this before.  And so have you guys.  You've

11   all done this.  Get me an answer.  But absent that, no

12   reason we can't have a hearing next week.  You could bring

13   an expert in, tell me what you think the monthly values are.

14           (indiscernible).  One hour.  Put somebody on the

15   stand, tell me what he thinks the value, the monthly rental

16   of this Southampton property is going forward, unless you

17   want to leave today, in which case not going to make you pay

18   July.  Assuming he wants to stay there, (audio glitch).  The

19   amount of that payment, past and future, is all I'm trying

20   to determine.  You want to hear it.  I'll get somebody to

21   come in.  I guarantee you they'll have somebody that'll take

22   the stand.  Here's the monthly rental in Southampton.

23   What's the square foot on this house?

24           MR. RAIMOND:  It's 10,000 square foot.

25           THE COURT:  Ten thousand square foot house in the

1    summer.  You can get it for me for 30 for the whole summer,

2    let the Court know, (indiscernible) you got to take it.  So

3    work it out or that's what we're going to do and we'll give

4    you the time next week to do it.

5            Yes (indiscernible).

6            MR. NAGI:  My only restriction would be -- oh,

7    next week is July 4th, Your Honor, so it's an odd week, but

8    we'll look at it.

9            THE COURT:  Probably the week after, but he's

10   leaving.  I want this resolved.  If you want it on paper,

11   I'll do it on paper too.  You want to submit an affidavit

12   from the broker, a broker's affidavit as to the monthly

13   value.  If Mr. Nagi wishes to cross (audio glitch) that --

14   he probably won't -- and they'll submit an affidavit and

15   I'll tell you what the values are -- really need to hear

16   anybody.

17           MR. NAGI:  That would be fine with the Debtor,

18   Your Honor.

19           MR. SASLOFF:  Your Honor, I don't know if -- are

20   you referring to Mr. Gallagher or Mr. Mangiaracina?

21           THE COURT:  You're the one that said you have the

22   lease.

23           MR. SASLOFF:  That's for Mr. Mangiaracina.  So my

24   position is, let's honor the lease because that --

25           THE COURT:  Here's my position.  If you produce

1    that lease, you're right.  Something tells me we're going to

2    probably end up in a valuation fight.

3              MR. SASLOFF:  No, Judge --

4              THE COURT:  Then you don't have a valuation fight.

5    We have another fight as to the enforceability of the lease.

6    I agree with you.  If there's a binding lease, that's the

7    term.  I'm assuming there isn't, for the moment.  Never been

8    produced.  If it is, then you don't have to do this.

9              MR. SASLOFF:  Your Honor, one point would be that

10   that lease would only be with one of the two people that are

11   in the house, Mr. Mangiaracina.  Mr. Gallagher, who also is

12   in the house does not have a lease.

13             THE COURT:  But if one party has a right to have

14   it for $2,000 a month, wants to have a party every night,

15   it's his house, unless there are restrictions in it.  Can

16   let anybody he wants to live there, unless there are

17   restrictions.

18             MR. SASLOFF:  I understand, Your Honor.  That is a

19   fair point.

20             THE COURT:  Let's see this lease.  Why it hasn't

21   been produced in the course of all this litigation is a

22   little baffling to me.  We'll see.

23             MR. SASLOFF:  It was produced right away.

24             THE COURT:  Sir, you have never seen it.  Don't

25   put yourself out on a limb that's going to get cut off.  You

1    don't have to say anything.  Don't prove to me you know

2    things.  Let go.  Everybody get back to me that we have the

3    lease this afternoon.  That will set up a different course

4    of action.  Don't have the lease, then I want affidavits.

5    Do it that way, from a broker, as to what he believes on

6    your side is monthly rent, past and future and the same for

7    Mr. Nagi and then I'll (audio glitch).

8            MR. NAGI:  Unless, of course, Your Honor, the

9    parties come to an agreement.

10           THE COURT:  Hope springs eternal, as I once said

11   (indiscernible) she threw me out of the courtroom.  Anybody

12   else wished to be heard?  Thank you all.  I hope we've moved

13   the football at least.  I don't see you, enjoy your July 4th

14   weekend.

15           CLERK:  How long you want to go --

16           THE COURT:  Put this out a month as a holding

17   date.

18           CLERK:  July 26.

19           MR. SASLOFF:  Judge, I'm going to be --

20           THE COURT:  Put it past July 26th.

21           MR. SASLOFF:  I'm coming back (indiscernible) 7th.

22   Is that the Monday?

23           THE COURT:  Fine.

24           MR. SASLOFF:  The 7th or 8th?

25           THE COURT:  Take that as a holding date --

1            CLERK:  August 7th at 10 a.m.

2            THE COURT:  If it's not solved, (indiscernible) is

3    a litigation over the ownership issue.  They're going to ask

4    probably for summary judgment on, I would assume.  We'll

5    have to see where we are.

6            MR. SASLOFF:  We had mentioned in our papers, the

7    original complaint (indiscernible) needs to be amended, so

8    we'll amend the --

9            THE COURT:  Your complaint.

10            MR. SASLOFF:  Yes.  Which is what the substance of

11    the ownership is from our complaint.

12            THE COURT:  Work out timing with Mr. Nagi.

13            MR. SASLOFF:  Fine.

14            MR. NAGI:  That's fine.

15            THE COURT:  Not going to object to their amendment

16    -- that's up to you, but assume he doesn't object and he's

17    got to have time to reply.

18            MR. SASLOFF:  We'll (indiscernible).

19            THE COURT:  Yeah.  My feeling is that we're not

20    going to end up -- either you'll settle it or that

21    litigation will take place.  If we have a lease, that's one

22    thing.  If we don't have a lease, these guys are going to

23    have to pay to stay there, so nobody's -- the Debtor is not

24    injured by their occupancy.  They want to move out, they can

25    move out.

1          MR. NAGI:  Your Honor, one other point to make.

2    This relates to the turnover motion.  The lender funded

3    insurance which is around $120,000 for this house.  The

4    insurance company has reached out and asked the Debtor for

5    access to the property.  So I would hope that we could

6    arrange for that and because otherwise --

7          THE COURT:  Subject to the convenience and rights,

8    will not interfere because if they do, then I'll make them

9    not interfere, you will have full access.

10          MR. NAGI:  Thank you, Your Honor.

11          MR. SASLOFF:  One last thing that I'd like to

12    (indiscernible). One of the issues that we've been having in

13    trying to move this case forward from the Gallaghers' point

14    of view and the Gallaghers' point of view is the property

15    (indiscernible) sold and we think that if it's marketed

16    correctly, they're protected because if the house sells for

17    as great as the value they think it is, all the liens get

18    paid and the guarantees get satisfied.  We've asked for

19    accounting or a breakdown of the secured creditors claim

20    because there are two main components to what we think the

21    mistake in that number is and we haven't been able to get

22    the secure creditor to give us, you know --

23          THE COURT:  If the UCC sale was proper, what's

24    you're standing to ask for that?

25          MR. SASLOFF:  Well, if the UCC was proper, and

1    there's a mistake in how the bidding was done, $500,000

2    damage claim, which reduces secured creditor's claim by

3    $500,000 plus applicable interest, so --

4              THE COURT:  But you may have a cause of action

5    with whoever comes after you.  Maybe -- but why would the

6    Debtor be involved in that?

7              MR. SASLOFF:  Because the Debtor would be paying

8    the secured creditor 500,000 plus interest more than

9    (indiscernible).  So that --

10             THE COURT:  You're assuming the secure creditor

11   goes after the Gallaghers.  If the secured creditor doesn't

12   go after your client, this secured creditor doesn't pursue

13   the Gallaghers on a deficiency, what's your standing to ask

14   for this?

15             MR. SASLOFF:  What the senior creditor takes

16   (indiscernible) the second, the third, and the fourth.  And

17   they're going to get paid potentially from this sale as well

18   if.  If they're taking a million dollars out of the estate

19   that they're not entitled to --

20             THE COURT:  What do you care?  You don't have any

21   interest in the estate anymore.

22             MR. SASLOFF:  But I -- but what about the -- I

23   have a guarantee for the second, the third, and the fourth.

24   So you're affecting my ability to defend --

25             THE COURT:  (indiscernible).

1              MR. SASLOFF:  -- your creditor too much money.

2              THE COURT:  Well --

3              MR. SASLOFF:  That's why I'm concern about the

4      whole structure of the case, was (indiscernible) we believe

5      that there's this million-dollar mistake that needs to be

6      corrected and we just want to be able to verify.

7              THE COURT:  So your argument is that your standing

8      here, loosely put, derives from your argument that you are

9      an owner, which would obviously be a claim; but even if the

10     Court determines you had no ownership interest right,

11     ownership interest and that the UCC sale was proper, that

12     you're a guarantor of their debt, other parties will come

13     after you, third parties.  These guys, you can deal with.

14     Third parties.  And if they don't pay them, you may owe them

15     and therefore you have a third-party claim over against

16     mortgagee?  I mean, what -- I'm trying to figure out.  Your

17     defense to the other party is --

18             MR. SASLOFF:  Well, it's not -- I don't know if I

19     have a defense to the other party.  What we're trying to do

20     is ensure that my clients don't get sued by making sure that

21     everybody gets paid the correct amount.  And the only person

22     who could really decide who that is, really the Debtor or

23     the secured creditor by showing (indiscernible).

24             THE COURT:  I assume it's a guarantee of payment,

25     these guarantees/

1           MR. NAGI:  Yes, Your Honor.  It's some of -- I

2    think there might be a completion guarantee wrapped in there

3    too, but what they're talking about --

4           MR. SASLOFF:  But a million dollars comes off the

5    top, Your Honor, that means the second creditor.

6           THE COURT:  Right.

7           MR. SASLOFF:  It flows to him and if we get a deal

8    from the second, that means (indiscernible).

9           THE COURT:  Which you know is an issue -- this

10   issue exists, almost every --

11          MR. SASLOFF:  Right.

12          THE COURT:  -- single asset case because the

13   principal always guarantees the loan.

14          MR. SASLOFF:  But I also believe that it's the

15   Debtor's interest to protect the creditors by making sure

16   that every layer of debt gets paid only that which they're

17   due.

18          THE COURT:  I agree with that.  The priority of

19   payment, what's available is paramount to the Court.

20          MR. SASLOFF:  And that -- so all we are -- what I

21   was trying to bring up, Your Honor, is I've asked for at

22   least three --

23          THE COURT:  Are you -- is Gallagher a creditor in

24   this case?

25          MR. SASLOFF:  Not certain, Your Honor.

1           MR. NAGI:  No, Your Honor.

2           MR. SASLOFF:  (indiscernible) no.  I don't know

3    because I know -- he could be, why, because one of the

4    mistakes is alleged is that the Gallaghers put their own

5    money into this estate, $250,000 to improve the property.

6    That money was added to the secured creditor.

7           THE COURT:  Got to figure that out.  You got to

8    figure out a they're creditors.

9           MR. SASLOFF:  We will.  On the bar date.  At the

10   final bar date.

11          THE COURT:  Yeah.  I mean, you will.

12          MR. SASLOFF:  (indiscernible) creditors if we

13   can't get this $200,000 (indiscernible), they're creditors

14   for $250,000.

15          THE COURT:  Guys, I think what you're seeing is

16   it's a microcosm of what happens in very large single asset

17   real -- any real estate cases.  The zeroes aren't

18   necessarily big enough to pay for all the expenses to

19   resolve the issue, because it's the same issues we deal with

20   in major cases.  So --

21          MR. SASLOFF:  That's why I was asking for the

22   Court's indulgence, the idea if we could get the secured

23   creditor to get us that breakdown, we could maybe at least

24   knock off one or two of the points that the Gallaghers have

25   raised (indiscernible).  Just bring it --

1          THE COURT:  Have a conversation with Mr. Nagi and

2     Mr. Goldwasser about why --

3          MR. GOLDWASSER:  Your -- I'm sorry, Your Honor,

4     this is David Goldwasser.  I --

5          THE COURT:  Go ahead.

6          MR. GOLDWASSER:  I have had discussions with the

7     parties on this and as the Debtor or the restructuring

8     officer of the Debtor, I have, you know, the interest of

9     getting all creditors paid the rightful amounts.  If the

10    secured creditor is wrongful in their claim when they file

11    their claim and Mr. Sasloff's clients want to ask to be

12    reduced, I think that they should have the right to do that.

13          In fact, I had Mr. Nagi connect them with counsel

14    to the secured creditor to have a direct conversation as the

15    number to me is it's not meaningless, it's very meaningful.

16    But if it gets reduced by 200,000 or the million dollars

17    that Mr. Sasloff just stated on the record, then there is

18    more money for other creditors.  Where I have issue and have

19    discussed it, not any specific number, is to me the claims

20    that they have are subjective and might need to be

21    litigated.

22          And if they want to spend the money to litigate it

23    and have, you know, that money come out of the estate from,

24    you know, the side of the secured creditor or whatnot if

25    they lose, I'm fine with -- I'm not telling him to sit down

1    and shut up.  I'm saying, bring your claims to the proper

2    forum.  You can't bring them to me just like to offer me

3    very little money --

4             THE COURT:  I'm not -- Mr. Goldwasser, what I'm

5    not going is negotiating deals here.  All I'm --

6             MR. GOLDWASSER:  No, I'm not --

7             THE COURT:  -- hearing.

8             MR. GOLDWASSER:  I'm just saying that they -- I

9    want them to be able to have their day in Court.  I'm not

10   trying to stop it.  That was my point.  I apologize.

11            THE COURT:  They are, as a firm and as an

12   individual, they are very familiar with this process.  I

13   don't have to advise them how to do it.  You all may

14   disagree, but they know or believe they know what they're

15   doing and my evidence of many, many years is they do.  You

16   may win.  They may be wrong but they know what they're

17   doing.  So I don't have to explain to them, he has reasons

18   for what he's doing.

19            My suggestion is just assume they do and are very

20   educated on these forms of cases.  You may disagree with

21   their analysis and you may be right, but don't assume they

22   don't know what they're asking.

23            So look, that that's it, before we get into stuff

24   that we shouldn't.  We're going to be back here.  If you

25   guys can resolve this or resolve pieces of it, if you need

Page 65

1    the Court's involvement to help you resolve issues, I will.

2    My inclination is, as you know, I don't send things to

3    mediation, especially when I have smart lawyers because I

4    don't think you need it.  You all have clients.  Talk to

5    your clients.  Nobody gets everything they want, ever.

6    Where we are.  Thank you, all.

7                MR. NAGI:  Thank you, Your Honor.

8                THE COURT:  Have a good holiday.

9                MR. HASBANI:  Thank you, Your Honor.  You, doo.

10                MR. SASLOFF:  Thank you, Your Honor.

11                (Whereupon these proceedings were concluded)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2

3                    RULINGS

4                                        Page      Line

5    Retention of Offit Kurman, GRANTED      32         7

6

7    Bar Date Motion, GRANTED                37         4

8

9    Cash Collateral Motion, GRANTED         40         9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  August 3, 2023

## &

**&**   4:10 5:17 7:7
  50:4

## 0

**00**   11:6

## 1

**1**   1:8,12 4:4
**1,000**   23:14
  45:23
**10**   57:1
**10,000**   45:24
  53:24
**100**   23:10
  45:23
**10022**   4:6 5:4
**101.14**   17:12
**10123**   4:13
**10:00**   1:23
**11**   17:12
**11042**   4:20
**11501**   67:23
**11722**   1:20
  5:13
**11:30**   36:13
**120,000**   58:3
**12151**   67:6
**125**   4:19
**13th**   51:16
**1408**   4:12
**150,000**   43:8
**1523**   5:19

## 2

**2,000**   45:12
  46:1 47:12
  48:10 55:14

**20**   11:9
**200,000**   26:5
  62:13 63:16
**2001**   4:19
**20036**   5:20
**2023**   1:22
  67:25
**210**   52:14
**22**   39:22
**22,000**   38:24
  39:17
**23-08034**   1:4
**23-71048**   1:3
**23-8034**   7:2
**24**   24:19
**250,000**   62:5
  62:14
**26**   56:18
**26th**   56:20
**28**   1:22
**28th**   43:7
**290**   1:19
**2nd**   36:24
  51:15

## 3

**3**   67:25
**30**   12:16 36:25
  37:9 54:1
**300**   67:22
**32**   66:5
**327**   17:12
**330**   67:21
**360**   43:16 44:5
  44:11 49:4
  52:9,13
**360,000**   43:12

**37**   66:7
**3rd**   5:3

## 4

**4**   35:20 66:7
**40**   66:9
**45**   14:8 16:20
  36:24
**450**   4:12
**4th**   54:7 56:13

## 5

**5**   33:18,24
  35:19,22,23
  36:3,6
**500**   23:7 38:22
**500,000**   23:4
  23:14 59:1,3,8
**560**   5:12,12
**590**   4:5

## 6

**6**   20:11 33:18
  33:19
**60**   44:11 49:3
**60,000**   43:7
  44:9,19
**6th**   4:5 51:17

## 7

**7**   66:5
**7th**   4:12 56:21
  56:24 57:1

## 8

**875**   5:3
**8th**   56:24

## 9

**9**   66:9
**9-625**   13:16
**90,000**   43:8
**9th**   5:3

## a

**a.m.**   57:1
**ability**   8:17
  14:8,18 16:22
  59:24
**able**   21:4 51:3
  58:21 60:6
  64:9
**absent**   53:11
**accelerated**
  22:22,22
**accept**   48:10
**acceptable**
  42:14
**access**   58:5,9
**account**   38:22
**accounting**
  58:19
**accrued**   24:18
**accurate**   67:4
**action**   24:25
  25:1 41:21
  49:9 50:5 56:4
  59:4
**active**   13:2,4
**actual**   23:19
**actually**   17:11
  24:18 35:21
  37:12 43:11
**add**   38:5 43:11

**added** 62:6

**additional**
18:19

**adjudicate**
29:9

**administrator**
52:22

**admit** 48:22

**adv** 1:4

**advance** 17:18
17:18

**advanced**
17:17 38:12

**adversary** 7:2

**advise** 64:13

**affairs** 51:15

**affect** 26:22

**affecting** 59:24

**affects** 24:17
37:12 50:24

**affidavit** 54:11
54:12,14

**affidavits** 56:4

**affiliate** 19:6

**affiliates** 19:5

**affirmatively**
29:10

**afternoon**
49:23 56:3

**ago** 12:16
26:12,25 34:4
46:15

**agree** 13:22
14:25 15:10
16:11 20:25
29:1 33:17
35:24 40:20

55:6 61:18

**agreed** 35:19
41:13 44:1

**agreeing** 31:25

**agreement** 9:5
16:10 52:25
53:1 56:9

**ah** 11:8

**ahead** 36:19
40:18 63:5

**ain't** 49:1

**al** 4:18

**alert** 47:21

**alleged** 62:4

**allows** 47:11

**amend** 57:8

**amended** 34:8
57:7

**amendment**
17:19 57:15

**amount** 9:13
9:16,23 12:3
19:16 24:18
29:3,3 50:12
53:19 60:21

**amounts** 63:9

**analysis** 64:21

**answer** 32:25
48:8 53:11

**answered**
50:19

**answering** 17:4

**anybody** 7:9
20:19 21:4
22:12,13 25:18
32:6 37:3
39:16,22 44:4

47:8 54:16
55:16 56:11

**anymore** 12:23
13:12 59:21

**anyway** 21:17
22:1 46:1

**apologize**
30:21 32:2
64:10

**appearance**
23:21 28:9

**appearances**
7:4

**appears** 17:4
27:12,16 32:15

**applicable** 59:3

**application**
17:15

**applications**
28:19

**apply** 19:7,9

**appointed** 50:7

**appreciate**
52:16

**appropriate**
18:22 48:24

**approve** 37:1
38:5

**approved** 20:8

**approximately**
46:18

**april** 43:7,7

**argue** 9:21
40:25 41:5
42:10

**argues** 53:4

**arguing** 15:15
31:17 38:11

**argument**
12:23,23 20:24
36:1 41:1,6,7
47:3 60:7,8

**arguments**
26:13

**arrange** 58:6

**arriving** 51:16

**art** 26:17

**asked** 36:23
49:19 52:15
58:4,18 61:21

**asking** 23:12
23:12 42:15
43:3 44:5
62:21 64:22

**asset** 15:7
26:11 38:25
41:18,23 42:1
45:22 61:12
62:16

**assist** 49:8

**assume** 10:24
27:11 39:19
57:4,16 60:24
64:19,21

**assumes** 16:2

**assuming**
53:18 55:7
59:10

**assumption**
27:15

**attach** 29:19

**attachment**
22:4,5

**attorney** 8:19
22:16 23:19,20
24:6 32:2
**attorneys** 4:4
4:11,18 5:2,10
5:18 30:5 31:6
31:9
**auction** 13:17
**audio** 8:6 10:2
12:25 22:4,16
22:18,24,24
23:1,3 26:2
27:7 35:4 36:4
40:2 41:16,17
42:11 45:10,12
45:13,15,22
46:14,19 47:1
47:8,12 48:21
49:9 53:18
54:13 56:7
**august** 51:15
51:17 57:1
67:25
**available** 61:19
**avenue** 4:5,12
4:19 5:3,19
**avrum** 17:6
**aware** 27:25
46:3,5 50:13
50:13

**b**

**b** 2:1 17:1
**back** 18:9 24:8
51:16 56:2,21
64:24
**backwards**
37:17

**baffling** 55:22
**ball** 53:2
**bank** 19:19
**bankruptcy**
1:1,18 2:3 8:1
19:10 24:11
26:7,17,18
30:4 34:18
**bar** 8:18 29:23
36:22 62:9,10
66:7
**based** 8:14,25
43:9 50:20
**basically** 9:20
26:5
**beginning**
11:24
**behalf** 7:10,12
8:6,10 29:9
37:8 42:12,15
43:14 50:4
**believe** 7:20
11:12 13:11
14:4 17:4,17
21:22,24 29:5
29:7 30:16
33:24 34:21
35:14 36:23
38:24 43:12,15
43:18 46:18
49:1,20 50:6
60:4 61:14
64:14
**believes** 9:5
56:5
**benefit** 15:6
41:24

**best** 8:12 21:2
27:4 28:11
31:24 32:25
**better** 12:22
22:9 25:18,20
**beyond** 48:20
**bid** 23:2,4,7,14
23:14 43:19,20
**bidding** 59:1
**big** 12:5 21:21
62:18
**bill** 25:22
**binding** 45:25
47:7,11 55:6
**bit** 11:2 12:12
**blatantly** 18:2
**blow** 20:17
**blue** 1:15 5:18
7:3,8,10,12
10:17,19,19,21
10:22,23,24
18:3,4,5,23,25
19:2,4,5 20:6
20:10 37:8
50:4
**bound** 19:15
47:2,2
**breakdown**
58:19 62:23
**bring** 17:5
19:18 20:2
30:12 31:22
32:17 44:14
52:19 53:12
61:21 62:25
64:1,2

**bringing** 18:13
**brog** 5:1 7:6
8:1 45:10
52:12
**broker** 7:17
8:18 12:5
33:13,25 54:12
56:5
**broker's** 35:5
54:12
**brokerage**
34:12
**brought** 9:15
32:9
**brown** 50:6,14
50:16
**building** 21:12
**bundle** 39:20
**business** 22:17
42:14,17 48:14
48:24 50:15
52:24

**c**

**c** 4:1 7:1 17:2
44:15 67:1,1
**calendar** 37:11
37:14,20
**call** 7:21 8:24
11:7 22:25
**called** 46:10
**capable** 30:17
**card** 20:19
**cards** 12:21
**care** 9:18 24:16
33:10 41:15
46:5 47:5
51:17 52:4

59:20

**cares** 39:16
  45:12

**case** 1:3,4 10:4
  12:25 15:24
  18:5,6,17 19:1
  19:7 21:1,3
  22:15,17,20,21
  23:20,21 24:6
  24:10,11,13
  25:18 27:5,13
  28:7 29:8 30:1
  30:5,12,15,25
  31:3,5,6,7
  32:20 33:3
  34:4,16 40:24
  43:7 52:18
  53:17 58:13
  60:4 61:12,24

**cases** 12:16
  13:13 20:25
  26:4,12 27:25
  62:17,20 64:20

**cash** 8:19
  37:22,24 38:3
  38:10,11,17
  39:13,14 40:1
  40:6,9 66:9

**castle** 1:15
  5:18 7:3,8,10
  7:12 10:19,19
  10:22 18:5,5
  18:24,25 19:3
  19:4,5 20:6,10
  37:8 50:4

**castle's** 18:3

**catch** 14:21

**cause** 16:6 59:4

**caveat** 32:7

**cayman** 1:15
  5:18 7:3,8,13
  10:17,19,21,22

**central** 1:20
  5:13

**certain** 29:23
  44:13 61:25

**certainly** 8:13
  29:19

**certified** 67:3

**chances** 25:24

**change** 23:21
  24:6 34:9

**changing** 46:24

**chase** 41:20

**chief** 7:14

**choices** 50:2

**claim** 9:9,10,14
  9:14,17,19,22
  12:3 25:11
  28:24 58:19
  59:2,2 60:9,15
  63:10,11

**claiming** 24:13
  24:15 25:5

**claims** 63:19
  64:1

**clean** 20:18
  21:11

**clear** 13:16
  15:1 16:14
  17:15,22 19:22
  29:24

**clearing** 52:19

**clerk** 7:2,20
  56:15,18 57:1

**client** 15:16
  24:20 31:14
  32:1 40:17
  42:13 44:24
  45:11,12,14,17
  46:10 48:21
  49:7,7,15,18
  49:20,22 59:12

**clients** 24:17
  26:22 27:19,20
  32:5 40:5
  60:20 63:11
  65:4,5

**close** 20:11
  26:5 48:14,24
  50:14

**collateral** 8:19
  37:22 38:3,10
  38:11,18 39:13
  39:14 40:1,6,9
  66:9

**combined**
  42:22

**come** 9:5 12:19
  18:18 19:10,24
  20:13,22 53:21
  56:9 60:12
  63:23

**comes** 30:14
  33:2 39:18
  59:5 61:4

**coming** 35:18
  37:24 40:15
  56:21

**commercial**
  21:12

**company** 58:4

**compiled** 27:10

**complaint** 57:7
  57:9,11

**completely**
  16:15

**completion**
  61:2

**complexities**
  26:13

**complicated**
  11:2 26:18

**components**
  58:20

**concede** 13:20

**concern** 28:7
  28:23 60:3

**concerns** 16:22

**conclude** 21:1

**concluded**
  65:11

**conference** 3:1

**confidence**
  28:25

**confirmable**
  21:5

**confirmed**
  19:24 20:18

**conflict** 7:23
  28:2,9,18
  32:16 34:15

**conflicts** 17:6
  31:23 32:10
  33:5

**confusing**
  17:14
**conjunction**
  32:11
**connect** 63:13
**connection**
  22:25
**consensual**
  16:10
**consent** 11:12
  23:21 24:5
**consequences**
  19:25
**consider** 30:8
**considerably**
  44:18
**contested**
  36:15
**continue** 29:17
  31:19
**convenience**
  58:7
**conversation**
  15:23 63:1,14
**conversations**
  14:23 33:21
**convince** 21:2
  21:14
**cooper** 5:17
**cooperative**
  28:10 30:3
**corbin** 6:2 7:17
  7:17 33:17,25
  34:5 35:3,3,10
  35:14,15,16
  36:3,4,7

**corbin's** 34:23
**corporation**
  10:22
**correct** 10:5
  11:4 14:10,16
  15:14,17 23:8
  24:2 34:5,14
  35:10 39:21
  60:21
**corrected** 60:6
**correctly** 58:16
**cost** 28:15
  44:15
**costs** 33:6
**counsel** 8:1,24
  10:17 17:6,14
  17:19 18:1,2,4
  18:23 19:18
  20:8,10 21:17
  21:18 23:22
  24:22 25:7,9
  28:12,16 29:21
  31:4,23 32:10
  33:5 37:10
  39:25 42:10,12
  49:14 63:13
**counsel's** 17:11
  17:16
**counsels** 19:3
**countered**
  43:24
**country** 67:21
**county** 47:24
**course** 39:2
  45:5 52:24
  53:5,9 55:21
  56:3,8

**court** 1:1,18
  7:9,11,16,19
  7:24 8:3,11,14
  8:15 9:1,10,18
  10:6,11,12,15
  10:21,23 11:8
  11:14,18,21
  12:15 13:6,14
  13:19,23 14:7
  14:12,16,21,23
  15:2,5,10,15
  15:18 16:5,6
  16:12,14,16,23
  17:1,3,7,21
  18:13,20 19:4
  20:4,13,16,24
  21:9 22:21,21
  23:6,9,12,15
  23:23,25 24:3
  24:12,20,24
  25:4,8,10,15
  25:18,22 26:7
  26:11 27:4,11
  27:14,14,20
  28:17 29:4,7
  29:14 30:7,14
  30:23 31:8,12
  32:4 33:10,23
  34:1,11,15,19
  34:22,24 35:2
  35:9,11,22
  36:1,3,5,8,14
  36:16,19,25
  37:3,4,10,13
  37:21,24 38:4
  38:5,10,15,19
  38:23,25 39:6

  39:10,14,22
  40:8,13,20,25
  41:1,3,10,12
  42:8,21 43:2
  43:10,14,19
  44:5,7,10,17
  44:21 45:3,7
  45:14,16,20
  46:5,7,10,13
  46:16,20,25
  47:2,6,15,20
  47:21 48:1,5,7
  48:8,9,14,17
  48:20,25 49:2
  49:9,12,15,23
  50:5,13,20
  51:1,5,9,12,19
  51:22,25 52:2
  52:7,16,21,24
  53:25 54:2,9
  54:21,25 55:4
  55:13,20,24
  56:10,16,20,23
  56:25 57:2,9
  57:12,15,19
  58:7,23 59:4
  59:10,20,25
  60:2,7,10,24
  61:6,9,12,18
  61:19,23 62:7
  62:11,15 63:1
  63:5 64:4,7,9
  64:11 65:8
**court's** 62:22
  65:1
**courthouse**
  5:11

**courtroom** 27:12 36:16 56:11
**courts** 26:8 28:1
**create** 18:19 22:2 40:13
**created** 17:24
**credible** 32:19
**credit** 12:3 18:6 23:4
**creditor** 4:11 7:8 18:5,25 19:19 22:18 23:14 28:12 29:19,19 37:8 42:2 58:22 59:8,10,11,12 59:15 60:1,23 61:5,23 62:6 62:23 63:10,14 63:24
**creditor's** 28:24 59:2
**creditors** 15:7 19:6 20:9,13 21:3 22:7 29:2 33:7 41:24 42:1,15 53:7 58:19 61:15 62:8,12,13 63:9,18
**critical** 31:17
**cro** 30:20,25
**cross** 54:13
**current** 12:24

**currently** 15:11 17:9
**cut** 9:23 10:17 10:23 29:14,24 53:6,6 55:25

**d**

**d** 7:1 17:2 66:1
**d.c.** 5:20
**damage** 59:2
**date** 8:18 36:22 41:16 56:17,25 62:9,10 66:7 67:25
**david** 6:3 7:14 30:19 63:4
**day** 19:12 29:18 37:9 40:24 64:9
**days** 36:24,25 37:19
**deal** 9:23 10:17 10:23 12:22 21:17 25:25 28:17 29:14 30:10,18 32:18 44:22 45:8 53:6,6 60:13 61:7 62:19
**dealing** 44:23 50:16,17
**deals** 52:23 64:5
**dealt** 22:17 31:1
**debt** 9:23,24 11:7,9 20:12 21:25 38:6

44:24 60:12 61:16
**debtor** 1:10 8:10,17,23 9:2 9:4,5,11,12,13 9:22,24 10:3 12:12,24 13:8 13:8,9 14:8,19 15:3,4,5,6,11 15:13,18,19,20 16:22 18:8,8 18:18,20,21,22 19:2,4,6,18,19 20:7,7,23 24:15 27:25 29:2,9 31:20 38:2,2,4,12,25 39:1,15 40:5 41:8,8,17,18 41:23,23,25,25 42:12 43:14,15 43:25 45:2,21 46:8 47:2 48:10 52:23 53:3,5 54:17 57:23 58:4 59:6,7 60:22 63:7,8
**debtor's** 9:19 9:22 14:18 18:3 29:20 38:21,25 41:18 42:10,11 61:15
**debtors** 9:21 11:15,16
**decide** 14:2,10 60:22

**decided** 14:3 18:12 19:3
**decision** 42:14 42:17
**decisions** 31:18
**declaration** 29:18
**decreases** 26:2
**deemed** 39:13
**deeper** 17:19
**defects** 52:20
**defend** 59:24
**defendants** 1:16
**defense** 46:2 47:10 60:17,19
**deficiency** 59:13
**define** 32:11
**delivered** 48:12,23
**demanded** 23:2
**department** 5:9 47:25
**deposition** 51:3
**derives** 60:8
**described** 48:22
**desire** 29:11
**determination** 14:18,20 51:5 53:8
**determine** 53:20
**determines** 60:10

**determining**
52:9
**different** 21:23
26:13 33:3
34:6,11 41:21
44:6 52:8 53:4
56:3
**direct** 63:14
**direction** 31:13
31:16
**disagree** 30:2
45:3 64:14,20
**disbursed**
24:19 27:9
**disbursements**
24:14
**disclose** 17:13
**discount** 42:24
**discuss** 16:25
24:16
**discussed**
63:19
**discussion** 8:16
33:16 43:23
**discussions**
8:23 9:3 44:1
63:6
**disinterested**
17:13
**dismissed** 13:5
**disparaging**
27:14
**disposed** 13:1
**disputed** 13:17
**distinction**
25:14

**distinguish**
25:10,11
**distribution**
12:9
**district** 1:2
**docket** 14:7
16:20 49:12,14
**doing** 12:22
27:25 53:2
64:15,17,18
**dollar** 43:16
60:5
**dollars** 23:2
26:11 59:18
61:4 63:16
**doo** 65:9
**drop** 33:18
**due** 49:4,4
61:17
**dug** 17:18

**e**

**e** 2:1,1,2 4:1,1
7:1,1 66:1 67:1
**earlier** 24:22
**eastern** 1:2
**ecro** 2:5
**educated** 64:20
**efficient** 10:10
**effort** 28:10
47:4
**either** 15:15
32:17 41:19
57:20
**emotional** 22:4
22:5
**ends** 21:10

**enforceability**
55:5
**enforceable**
47:11
**enforcing** 16:8
50:16
**enjoy** 56:13
**enormous**
19:16 25:22
**ensure** 60:20
**enter** 49:2,6
**entered** 11:12
16:6 24:6 43:9
**entire** 11:24
34:6
**entirety** 34:17
**entitled** 59:19
**entity** 9:25,25
13:9 19:19
25:2 34:10
**environment**
22:3
**equipped** 22:9
**equitable**
22:25 52:23
**equity** 21:24
21:25 41:25
**especially** 33:4
65:3
**essentially**
18:23
**establish** 50:1
53:3
**estate** 7:18
19:21 20:11
21:20 26:16,17
34:7 40:6

59:18,21 62:5
62:17 63:23
**estates** 26:18
**et** 4:18
**eternal** 56:10
**everybody**
12:12 22:6
27:12 29:24
30:16,21 32:5
32:24 33:6
39:18 56:2
60:21
**everybody's**
27:6 30:24
**evidence** 64:15
**evidential** 49:3
**evidentiary**
50:1,21,24
51:19
**exact** 28:5
**exactly** 17:15
21:18 24:9
**exception**
16:13
**excused** 36:12
**executed** 11:18
**exist** 50:15
**exists** 15:18
47:22 61:10
**exorbitant**
26:12
**expeditiously**
27:6
**expenditure**
44:16
**expenses** 39:2
44:13 62:18

**experience** 12:17 31:14

**expert** 53:13

**explain** 64:17

**explained** 17:20

**extent** 9:3 30:15

**f**

**f** 2:1 67:1

**facilitate** 9:2

**facility** 45:23

**facing** 49:19

**fact** 9:14 29:14 30:8 63:13

**fair** 44:23 52:23,23 53:9 55:19

**fairly** 29:8 30:16 42:25

**faith** 15:25

**falls** 13:17

**familiar** 17:7 64:12

**far** 25:21 28:21 29:12

**fast** 51:19

**father** 51:15

**favor** 36:14

**federal** 1:19 5:11,12 22:21 50:5

**fee** 19:7,9 28:19

**feel** 11:4 32:16 52:7 53:6

**feeling** 19:23 57:19

**feels** 33:24 52:23

**fight** 12:8 13:19,20 22:6 55:2,4,5

**fighting** 25:17

**figure** 25:23 60:16 62:7,8

**figured** 32:21

**file** 29:20 33:14 34:8 47:9 63:10

**filed** 14:1 17:2 17:14,19,22 23:20 24:5,10 29:13,17 33:22 35:19 36:24 43:7 50:6,7

**filing** 17:24

**final** 28:19 44:15 62:10

**fine** 30:23 37:19 48:21 53:1 54:17 56:23 57:13,14 63:25

**finish** 24:3 30:5

**fire** 31:21,21

**firm** 7:25 12:16 17:11 19:17 20:22,22 21:16 23:18,18 28:4,8,16,25 29:8 30:3,9

**firms** 32:14

**first** 8:16 11:25 12:1,9 17:14 17:16 19:3 22:20 36:18 39:20 52:6

**floor** 4:5 5:3

**flow** 40:5,15

**flows** 61:7

**folks** 32:11

**foot** 53:23,24 53:25

**football** 56:13

**foreclosure** 19:21 22:20 23:19,23,24 24:25 25:1 50:5

**foregoing** 67:3

**forever** 30:18

**form** 17:6 40:10

**forms** 64:20

**forth** 50:18

**forum** 64:2

**forward** 10:4 49:13 50:9 53:16 58:13

**found** 24:7

**fourth** 59:16 59:23

**frankly** 19:8

**free** 11:4 52:7 53:6

**front** 9:1 10:15 11:14,15,16 13:6 14:3,19 15:3,21 19:11 23:16 27:16 31:9 32:17 36:12 41:4,22 42:20

**full** 58:9

**fund** 38:19

**funded** 58:2

**funds** 24:19 38:16 44:16 49:6

**future** 33:1 53:19 56:6

**g**

**g** 7:1 8:6

**gallagher** 4:18 5:2 7:6 8:2 11:13 12:25 15:12,16 25:2 25:2 41:3,13 42:5 43:15 45:9,16,17 54:20 55:11 61:23

**gallaghers** 8:23 9:7,11,16,18 9:25 10:15 11:5,6,14 12:10,19 16:7 21:24 22:16 24:22 39:25

42:22 50:25 58:13,14 59:11 59:13 62:4,24
**gating** 42:23
**gavalas** 4:17 4:22 8:5,6
**general** 20:9
**generate** 21:4
**generated** 38:6 38:8
**generating** 21:5
**gentleman** 25:25 41:14 47:11
**gentlemen** 50:14
**george** 4:17,22 8:5
**getting** 25:25 44:15 63:9
**gift** 39:19
**give** 12:20 21:15 31:13 43:16 44:7 46:25 48:15 49:19 54:3 58:22
**given** 23:5
**giving** 31:16 50:14
**glitch** 8:6 10:3 12:25 22:4,16 22:18,24,25 23:1,3 26:2 27:7 35:5 36:4 40:2 41:16,17

42:11 45:10,12 45:13,15,22 46:14,19 47:1 47:8,12 48:21 49:9 53:18 54:13 56:7
**go** 10:7,8,8,13 16:16,17 19:21 22:1 29:12 32:23 33:13 36:1,19 40:6 46:17 48:20 52:7 56:2,15 59:12 63:5
**goal** 33:6,8
**goes** 23:18 59:11
**going** 10:13,13 12:19 13:21 16:1 21:4 22:13 26:21,23 29:22,23 30:8 30:11 32:6 43:13,17 44:15 45:10 46:23 49:2 50:18 52:9 53:2,16 53:17 54:3 55:1,25 56:19 57:3,15,20,22 59:17 64:5,24
**goldwasser** 6:3 7:14,14 30:19 30:20,24 31:8 31:9,11,22 42:12,13 49:18 52:22 63:2,3,4

63:6 64:4,6,8
**goldwasser's** 53:8
**good** 8:5,7,9 15:25 26:15 32:19 65:8
**gotten** 28:14 33:22 52:14
**grand** 39:23
**grant** 32:7 36:8 37:4 40:9
**granted** 66:5,7 66:9
**granting** 37:9
**great** 58:17
**greece** 51:16
**greg** 6:2 7:17 35:3
**grossman** 2:2
**group** 7:18 34:6,7,11,18 34:20 35:15
**group's** 35:14
**guarantee** 53:21 59:23 60:24 61:2
**guarantees** 58:18 60:25 61:13
**guarantor** 60:12
**guarantors** 9:19 10:16
**guess** 13:21 16:19 38:5,13 41:15 42:4

**gut** 27:1
**guy** 15:12
**guys** 9:22 15:25 17:2 22:3 35:9 44:22 49:2,25 53:10 57:22 60:13 62:15 64:25

### h

**half** 23:2
**hammer** 13:17
**hampshire** 5:19
**handle** 8:15
**handled** 30:16 32:17
**happened** 45:16
**happens** 62:16
**happy** 12:13 16:24 28:15
**hard** 49:1
**hasbani** 4:10 4:15 7:7,7,7 24:8 25:21 28:12 30:5 37:7,7,11,14 37:19 50:3,3,4 65:9
**hate** 36:11
**hats** 18:23 24:7
**hear** 16:18 41:1,5 43:2 53:20 54:15
**heard** 47:18,20 56:12

| | | | |
|---|---|---|---|
| **hearing** 3:1 | 17:10 18:12,15 | 53:25 55:11,12 | **indicated** |
| 7:22 37:3 | 18:16 20:5,15 | 55:15 58:3,16 | 33:17,20 |
| 42:22 46:2 | 20:21 22:14 | **houses** 33:19 | **indiscernible** |
| 49:3 50:1,21 | 24:2,4,22 | **housing** 35:21 | 7:23 14:12 |
| 50:24 51:2,20 | 25:14 26:3 | **hyde** 3:25 4:20 | 16:21 17:21 |
| 52:3 53:12 | 27:23,25 28:18 | 67:3,8 | 18:25 19:15 |
| 64:7 | 29:6,18,25 | | 20:9,21 23:21 |
| **held** 28:1 29:22 | 30:2,6,13,19 | **i** | 25:17 28:2,20 |
| 29:23 | 31:25 33:12,14 | **idea** 11:24 18:1 | 29:15 36:16 |
| **help** 30:9 52:18 | 34:3,13 35:3 | 18:3,3 29:17 | 41:11 43:19 |
| 65:1 | 35:12,23 36:2 | 29:24 35:24 | 45:18 47:4,14 |
| **helps** 10:3 | 36:7,11,21,22 | 62:22 | 48:5,10,19,21 |
| **higher** 52:19 | 37:5,7,8,18,23 | **identified** 32:9 | 48:22 49:14 |
| **highest** 12:4 | 38:14 39:8,21 | **identifying** | 52:10 53:14 |
| **hire** 31:21 | 40:4,12,21,23 | 32:20 | 54:2,5 56:11 |
| **hired** 30:25 | 43:5,11,21 | **immediately** | 56:21 57:2,7 |
| **historically** | 45:1,8 46:3,21 | 49:7,10 | 57:18 58:12,15 |
| 12:17 | 47:18,23 50:3 | **implications** | 59:9,16,25 |
| **history** 29:8 | 50:23 51:13 | 16:2 | 60:4,23 61:8 |
| **hold** 7:11 | 52:5,11,18 | **improve** 62:5 | 62:2,12,13,25 |
| 21:11,20 43:12 | 54:7,18,19,24 | **inadvertently** | **individual** |
| **holder** 12:24 | 55:9,18 56:8 | 40:13 | 64:12 |
| **holders** 42:3 | 58:1,10 61:1,5 | **inaudible** 18:6 | **individually** |
| **holding** 34:19 | 61:21,25 62:1 | **incentive** 19:24 | 10:16 |
| 38:2 48:18 | 63:3 65:7,9,10 | **incentives** | **indulgence** |
| 56:16,25 | **honorable** 27:8 | 21:13 | 62:22 |
| **holds** 34:22 | 27:11,17 | **inclination** | **inescapable** |
| **holiday** 65:8 | **hook** 12:18,18 | 31:19 65:2 | 28:9 |
| **hon** 2:2 | **hope** 28:14 | **includes** 52:13 | **inflated** 29:3 |
| **honest** 48:18 | 56:10,12 58:5 | **including** | **informed** |
| **honor** 8:4,5,7,9 | **hour** 53:14 | 32:11 39:18 | 35:15 |
| 8:13,22 9:12 | **house** 19:11,12 | **inclusion** 33:4 | **injured** 57:24 |
| 10:5,7,9,9,20 | 21:11,21 25:23 | **increases** 26:1 | **instincts** 44:17 |
| 11:17 13:11,15 | 26:20 41:8,8 | **independent** | **instruments** |
| 14:6,9,9,10,19 | 41:14 44:2 | 31:2,3 50:17 | 11:7 |
| 15:17 16:11,15 | 45:23,24,24 | **independently** | **insurance** 58:3 |
| 16:19,24,25 | 49:8,9 53:23 | 16:7 31:12 | 58:4 |

| | | k | kuhns   7:20 |
|---|---|---|---|
| intention   28:20 | 61:9,10 62:19 | | kurman   4:3 |
| interest   12:24 | 63:18 | keep   30:10 | 8:10 66:5 |
| 18:7 20:10 | issued   44:15 | 31:22 | |
| 21:5 23:1,1,7 | 50:11 | keeping   30:3 | l |
| 24:19 27:9 | issues   9:22 | kept   46:23 | |
| 42:2 59:3,8,21 | 26:21,21 28:18 | keys   21:20 | l   8:6 37:10 |
| 60:10,11 61:15 | 29:5,9 30:15 | kind   12:5 | landlord   45:21 |
| 63:8 | 32:20 35:11 | 26:10 52:18 | language   40:20 |
| interested   10:3 | 52:20 58:12 | kirk   5:17 | large   12:6 |
| 44:21 | 62:19 65:1 | knock   62:24 | 62:16 |
| interests   21:3 | | know   7:20 10:7 | largely   19:18 |
| interfere   58:8 | j | 11:3 13:1 14:4 | law   4:17 13:24 |
| 58:9 | | 16:4 18:24 | 14:4 30:1 |
| interrupt | jason   4:8 8:9 | 19:10 21:16 | 32:14 |
| 30:20 52:25 | job   32:19,20 | 22:1,13 23:11 | lawyer   19:10 |
| intersection | john   5:22 7:10 | 24:9,9 25:18 | 27:15,16 30:17 |
| 26:14 | 7:12 | 26:9,17,24 | 31:18 |
| involved   12:10 | joined   27:24 | 28:16 30:6,17 | lawyered   32:13 |
| 59:6 | 28:22 | 31:1,12,13 | lawyers   27:18 |
| involvement | joyce   7:20 | 32:1 35:7,23 | 27:19,21 32:4 |
| 65:1 | judge   2:3 7:20 | 39:11,24 40:2 | 65:3 |
| island   5:11 | 22:21 27:19 | 40:24 41:5 | layer   61:16 |
| islip   1:20 5:13 | 33:9 36:12,18 | 42:6 43:3 45:8 | lead   21:1 |
| issue   9:7 10:14 | 48:3,6,11,16 | 45:10,11 49:16 | lease   45:11,25 |
| 13:10,12,14,15 | 50:6,11,14,16 | 49:16,17,23 | 46:11 47:1,3,7 |
| 13:23 14:3,5,7 | 51:7,21 55:3 | 50:15 51:7,18 | 47:7,11,22 |
| 14:11,12 15:3 | 56:19 | 52:5 54:2,19 | 48:9,22,25 |
| 15:21 17:10,25 | judgment   57:4 | 56:1 58:22 | 49:1,10,17 |
| 18:8 20:1 25:4 | judgments | 60:18 61:9 | 50:8 51:10 |
| 28:3 29:4 | 11:11 16:7 | 62:2,3 63:8,23 | 54:22,24 55:1 |
| 31:18 32:14,23 | july   43:8 51:16 | 63:24 64:14,14 | 55:5,6,10,12 |
| 33:2 37:18 | 52:13 53:18 | 64:16,22 65:2 | 55:20 56:3,4 |
| 41:4,4 42:4,23 | 54:7 56:13,18 | known   35:18 | 57:21,22 |
| 44:25 45:5 | 56:20 | knows   29:25 | leave   32:18 |
| 46:23 48:4 | june   1:22 43:8 | 31:4,4 32:25 | 41:20,21 51:23 |
| 49:24 51:3,14 | junior   39:18 | 53:9 | 53:17 |
| 52:13 57:3 | 40:2 42:3 | | leaving   51:16 |
| | justice   5:9 | | 54:10 |

**ledanski** 3:25
67:3,8
**leech** 5:1 7:5
7:25 52:12
**legal** 31:15
49:21 67:20
**legally** 9:25
22:10 27:5
**legitimate** 29:2
29:5
**lender** 9:2,8
12:10 17:21
38:1 39:1,11
39:12,14,16,16
42:24 58:2
**lender's** 9:9,10
9:14,17 38:17
**lenders** 12:1
**letter** 25:7
**letting** 51:18
**liabilities** 10:25
**license** 34:19
34:22 35:5,9
**lien** 11:25 12:9
21:21 40:18
42:3
**liens** 11:21,21
12:1,2 21:22
21:23 58:17
**lift** 21:7
**light** 4:10 7:7
50:4
**liked** 35:18
**likes** 40:25
**limb** 55:25
**line** 33:17 66:4

**list** 12:6
**listen** 31:12
44:21 48:7
52:2,21
**litigate** 23:16
63:22
**litigated** 63:21
**litigating** 28:7
**litigation** 13:2
13:3,4,5 55:21
57:3,21
**little** 11:1
12:12 17:19
55:22 64:3
**live** 7:24 13:10
13:12,23 15:10
50:9 55:16
**living** 26:15,16
45:22
**llc** 1:8,12 4:4
7:3 11:10
12:24
**loan** 17:18,24
18:2 38:4 39:7
39:17 61:13
**local** 22:16
**locks** 46:24
**long** 5:11 26:8
46:16 56:15
**longer** 25:7
**look** 13:12
14:13 22:10
28:25 30:11
39:8 47:7 54:8
64:23
**looking** 41:24
44:1 45:2

**loosely** 60:8
**lose** 63:25
**lost** 33:22
**lot** 11:6 16:1
22:16 26:20,20
27:25 47:4,18
**lowers** 24:18
**luckily** 32:5

**m**

**m** 4:17,22 5:7
**made** 43:21,24
**madison** 4:5
**main** 58:20
**maintain** 38:1
44:13
**maintenance**
44:14
**major** 19:18
62:20
**make** 15:6 20:3
20:24 22:2
24:14 26:9
33:5 39:8 40:7
49:15 52:8
53:17 58:1,8
**makes** 30:3
**making** 31:17
45:9 60:20
61:15
**man** 27:3
**managing**
31:20
**mangiaracina**
42:7,8 43:16
50:25 54:20,23
55:11

**march** 12:20
43:7
**marching**
20:14
**marcus** 4:19
**mark** 4:18 5:2
7:6 8:1 10:15
15:11 25:2
**market** 44:2,24
**marketed** 12:6
35:25 58:15
**marshals** 49:21
**math** 43:17
**matter** 1:6 7:2
26:22 36:15
**matters** 51:17
**maximize** 33:7
**mean** 20:1 26:9
27:18,18,19
30:7,20 38:6
39:24 41:13
60:16 62:11
**meaningful**
63:15
**meaningless**
63:15
**means** 18:10
32:12 61:5,8
**measure** 45:1
**mechanics**
11:21
**mediation** 65:3
**members** 35:8
**mentioned**
57:6
**michael** 8:6
42:5 45:15

**microcosm**
62:16
**million** 11:9
20:11 23:2
26:11 59:18
60:5 61:4
63:16
**mine** 36:17
**mineola** 67:23
**minimize** 32:4
33:5
**minimum** 23:2
23:7,13
**missing** 30:24
**mistake** 58:21
59:1 60:5
**mistakes** 15:23
62:4
**modeling**
26:10
**moment** 22:8
55:7
**monday** 56:22
**money** 17:23
22:4 25:25
26:20 27:9,10
37:25 38:2,6,8
38:12 39:6,10
39:12,20 40:5
40:14,15,17,17
45:22 60:1
62:5,6 63:18
63:22,23 64:3
**monies** 25:24
**monitor** 30:15
31:2

**month** 45:12
46:11 47:12
48:10 49:5
51:5 55:14
56:16
**month's** 52:15
**monthly** 41:12
44:18 50:20
53:3,13,15,22
54:12 56:6
**months** 26:24
26:25 41:15,16
44:9,19 46:19
**morning** 8:5,7
8:9
**mortgage** 9:24
11:10 39:15
**mortgagee**
10:18 19:20,25
21:6,18 38:12
60:16
**motion** 8:17,18
8:18,19,20
10:9 14:10,14
14:15,17 16:21
17:2 26:6
33:14 36:23
37:4,22 39:5
40:9,21,22,22
41:1 43:4,5,6
44:22 47:10
50:7 58:2 66:7
66:9
**motions** 8:14
16:18
**motivates**
30:10

**mouth** 11:3
**move** 10:4
37:17,17 53:1
57:24,25 58:13
**moved** 34:7,11
56:12
**moving** 35:16
40:24
**murky** 29:21

## n

**n** 4:1,19 7:1
66:1 67:1
**nagi** 4:8 7:22
8:9,9,11,11,13
9:13 10:5,7
11:1,9,16,20
11:23 13:3,11
13:15,22 14:6
14:13,17,22,25
15:9,14,17
16:9,15,19,24
18:16 19:5,9
21:13 23:13
24:2,4 27:4
28:11 30:13,16
31:4,14,15
33:12 34:2,13
34:17,21,23
35:1,4,16
36:22 37:5,16
37:22,25 38:8
38:14,17,21,24
39:4,8,11,21
40:12,21 41:9
41:11 42:7,19
43:5,11,17
46:21 47:1,8

47:16,18 48:23
49:18 52:5,22
54:6,13,17
56:7,8 57:12
57:14 58:1,10
61:1 62:1 63:1
63:13 65:7
**nagi's** 23:18,18
28:4,16 29:7
30:3,9 32:10
**name** 34:9
**nature** 17:20
**necessarily**
62:18
**need** 16:9
20:17,18 21:10
26:19 34:2
54:15 63:20
64:25 65:4
**needed** 28:21
**needs** 29:24
35:24 57:7
60:5
**negotiate** 12:11
**negotiating** 9:1
64:5
**negotiation**
10:2 42:11
**negotiations**
33:15 40:4
**neither** 15:11
**never** 16:10
55:7,24
**new** 1:2,20 4:6
4:13,20 5:4,19
34:16 40:17

nichole  4:18
  5:2
nicole  7:6 8:1
  10:15 11:13
  15:16 25:2
night  55:14
nobody's  15:15
  31:17 51:6
  57:23
normally  29:1
north  7:17
  34:7 35:1,2,4
northwood
  34:25
notice  23:20
number  8:14
  17:4 22:24
  35:20 36:4
  41:14 43:23
  44:6,7 49:3
  52:10,13,14
  58:21 63:15,19
numbers  36:8
  43:13
nw  5:19
ny  4:6,13,20
  5:4,13 67:23

**o**

o  2:1 7:1 44:15
  67:1
o'clock  36:20
object  20:14
  22:12 37:3
  39:1,22 52:6
  57:15,16
objected  28:5
  35:17 50:9

objection
  27:24 31:15
  33:15,25 35:13
  35:17 37:1,4
  39:25 40:3
objections  9:15
  9:16 17:3,8
  19:14 28:24
  29:1
objectors  8:24
  9:6,8
objects  52:6
obligation  16:4
obligations
  16:3
obviously  60:9
occupancy
  41:18 42:9
  43:4 57:24
occupy  15:19
  41:14
occupying  15:4
ocean  51:24
odd  21:6 54:7
offer  9:4 42:22
  42:23 43:21,24
  44:10 52:8,18
  64:2
offered  9:4
  44:8,12
offering  42:8
office  4:17 28:1
  28:22 32:16
officer  7:15
  48:9 63:8
offit  4:3 8:10
  32:18 66:5

oftentimes
  39:15
oh  54:6
okay  7:16 10:6
  25:15 27:22
  29:7 37:11,13
  49:13
old  16:7 67:21
once  56:10
open  14:11
  51:17
opened  34:5
operating  35:6
opportunity
  47:9
opposing  26:6
order  13:14,15
  16:6,18 21:23
  30:25 34:8
  36:9 38:15
  40:6,10 43:9
  49:2,6,24
  50:11 51:23
ordered  8:16
orders  50:17
ordinary  39:2
  52:24 53:5,9
organization
  11:25
original  18:9
  35:14 57:7
originally
  10:21
outside  32:15
  52:7
owe  24:15,18
  44:24 60:14

owed  24:13
  43:15
owing  49:4,4
own  9:21 15:11
  17:3,13,15
  19:6 21:24
  29:20,21 34:13
  35:7,9 62:4
owner  41:25
  60:9
owners  15:12
ownership
  15:20 41:4
  57:3,11 60:10
  60:11
owns  13:9 15:3
  15:4,8 41:8,23
  45:21

**p**

p  4:1,1 7:1
pa  4:3
page  66:4
pai  41:17
paid  15:6
  17:16 23:9
  46:1 49:6
  50:12 58:18
  59:17 60:21
  61:16 63:9
pain  32:23
paper  23:9
  46:7 49:1
  54:10,11
papers  10:8
  14:1 17:14
  29:12,17 35:13
  35:19 57:6

**paramount**
  61:19
**park** 4:20
**part** 32:8 33:15
  34:20 39:6,17
  40:4
**particular**
  24:15
**particularities**
  21:1
**parties** 13:25
  20:8 27:4 30:3
  31:1,1 33:1
  40:11 43:25
  48:24 50:19
  56:9 60:12,13
  60:14 63:7
**parting** 51:24
**partner** 12:15
**parts** 14:14
  40:23
**party** 13:7 16:3
  16:3,5 17:13
  19:8,23 31:16
  31:20 32:9
  40:19 42:4
  55:13,14 60:15
  60:17,19
**passed** 51:15
**past** 31:24
  42:24 53:19
  56:6,20
**pay** 15:19
  21:14,15 29:2
  41:19 42:9,11
  42:15 44:13,23
  45:25 53:3,17

57:23 60:14
  62:18
**paying** 42:4
  50:10 59:7
**payment** 44:24
  46:11 50:20
  52:18,24 53:19
  60:24 61:19
**payoff** 26:5
**pays** 45:12
**pc** 4:10,17
**pending** 50:5
**people** 7:24
  12:6,19 15:10
  16:6 21:22
  23:3 26:19,23
  28:4 34:10
  36:9 40:16
  41:13 45:22
  48:5 55:10
**percent** 24:19
  33:18,18,19,24
  35:19 36:6
**period** 42:20
  44:8 51:24
**peripheral**
  26:21
**person** 7:11
  30:21 31:3
  32:3 51:2
  60:21
**personal** 10:24
**personally**
  37:12
**perspective**
  8:16,21 13:25

**petition** 25:14
  41:16
**phone** 7:9 27:1
  28:12 34:23
**picture** 29:21
**piece** 46:7
**pieces** 64:25
**place** 40:7 47:5
  57:21
**plaintiff** 1:13
**plan** 11:18,25
  19:20,24 20:17
  20:18 21:5
  41:14
**play** 10:16
**plaza** 1:19 5:12
**pleadings**
  33:22
**pleasant** 36:16
**please** 7:3
**pllc** 5:17
**plus** 43:16 44:5
  44:12 59:3,8
**point** 7:18
  10:14 26:14
  27:7 28:20
  31:20 32:2
  34:7 35:1,2,4
  38:7 42:10,17
  43:23 55:9,19
  58:1,13,14
  64:10
**points** 41:2
  62:24
**police** 46:23
  47:24 48:12

**position** 28:4
  47:1 54:24,25
**possession**
  49:20
**possibilities**
  22:23
**possibility**
  18:11
**post** 25:14
  38:13
**potentially**
  17:6 22:22
  59:17
**practice** 22:17
**pre** 3:1 12:6
  38:13
**precedent** 33:1
**prefer** 19:13
  53:4
**preference**
  17:25
**prepared**
  40:25
**prepetition**
  17:16 38:13,14
  38:15 41:15
**present** 6:1
  51:2
**presented** 40:1
**preserve** 40:18
**previously**
  18:4 35:6
**primarily** 8:24
**prime** 39:18
  40:16
**priming** 39:16

**principal** 13:8
  61:13
**prior** 22:18
  51:4 52:15
**priorities**
  40:14
**priority** 61:18
**privileged**
  49:17,18
**probably** 8:15
  13:21 22:11,11
  40:7 54:9,14
  55:2 57:4
**problem** 17:23
  20:5,23 24:12
  25:11,12 26:25
  28:21 42:16
**problems**
  51:25 52:3
**proceed** 15:22
**proceeding**
  19:21 41:19
  50:17,18
**proceedings**
  65:11 67:4
**process** 64:12
**produce** 54:25
**produced** 50:8
  55:8,21,23
**pronounce**
  42:6
**proper** 18:9
  19:1,2 58:23
  58:25 60:11
  64:1
**properly** 37:14
  37:20 40:15

**property** 11:10
  12:2,4,7,20
  23:25 24:1
  35:24 38:1,9
  41:8 44:3,4,4
  44:13,14,18
  45:13,13 46:24
  49:20,21 50:8
  50:10 52:19,20
  53:16 58:5,14
  62:5
**proposed** 36:9
**proposing**
  16:11
**propriety**
  18:10
**protect** 53:7
  61:15
**protected**
  58:16
**protecting** 27:6
**protective**
  17:18
**prove** 56:1
**provide** 34:8
**provided** 37:25
  38:2
**pulled** 24:8
**pursuant** 23:5
**pursue** 59:12
**put** 14:19 23:3
  24:8 30:9
  31:25 40:16,16
  40:18 47:19
  53:14 55:25
  56:16,20 60:8
  62:4

**putting** 11:3
  40:17

**q**

**question** 18:9
  18:10 41:22
  48:8 50:19
**questions**
  10:10 17:3,5
  18:7
**quickly** 30:6
  42:25
**quite** 17:13
  19:8

**r**

**r** 2:1 4:1 7:1
  67:1
**rafi** 4:15 7:7
  37:7 50:3
**raimond** 5:6
  7:5,5 25:13
  26:4,9 27:8,13
  27:18,22 52:11
  52:11,17 53:24
**raise** 45:1
  52:13
**raised** 17:3
  62:25
**ramer** 5:22
  7:10,10,12,12
**rate** 33:15,18
  35:17 44:2
**rather** 29:21
**reach** 12:5
  32:18 52:25
**reached** 58:4

**read** 47:8,9
  48:9 50:21
**reads** 10:8
**ready** 44:14
**real** 7:18 10:14
  20:1 26:12,15
  26:17,18 34:7
  62:17,17
**realistically**
  28:23
**really** 9:7 11:5
  12:13 27:19
  33:7 39:25
  40:22 47:6
  52:14 54:15
  60:22,22
**reason** 9:18
  28:6 30:11
  48:25 53:12
**reasonable**
  53:9
**reasons** 64:17
**recall** 48:3,4,5
**receiver** 50:7
**record** 10:12
  11:4 30:6
  63:17 67:4
**reduced** 28:15
  63:12,16
**reduces** 59:2
**reduction** 9:8
  24:13 33:24
**referring** 54:20
**reg** 1:3,4
**regard** 28:18
  28:23

**regardless** 15:8
**regards** 50:11
**rejected** 43:24
**relate** 9:16
**relates** 38:3
58:2
**relationship**
18:24 34:24
**relatively** 30:5
**release** 16:5
**rely** 50:20
**remaining**
46:19
**remains** 36:23
**reminding**
42:13
**removed** 13:1
13:4 24:23
25:6
**rent** 44:2 48:10
50:6,7 52:13
52:15 53:3
56:6
**rental** 44:18
53:15,22
**rented** 41:12
**repaid** 39:10
**reply** 29:20
57:17
**represent**
18:18 19:5
20:8,22 24:24
24:25 33:23
45:19
**represented**
18:4,23 22:24

**represents**
20:10 25:23
**requested** 9:9
14:9 37:10
**require** 30:8
**required** 23:3
33:4
**requirement**
17:12
**requires** 16:6
45:25
**resolve** 16:1
17:5 26:22
41:4,6,7 62:19
64:25,25 65:1
**resolved** 27:6
54:10
**respect** 11:3
18:1 51:25
52:2
**response** 47:9
50:23
**responsive**
29:12
**rest** 44:22
**restriction**
54:6
**restrictions**
55:15,17
**restructuring**
7:15 63:7
**result** 42:21
**retain** 32:19
**retained** 16:23
17:2 25:13
**retainer** 17:16
17:16

**retaining** 33:25
**retention** 8:18
8:19 17:9,15
28:5 32:7
33:13 35:14
36:8 66:5
**retroactive**
51:5
**return** 33:7
**reverse** 22:5
**review** 19:11
**reviewing**
40:10
**rid** 12:18
**right** 7:24 11:7
13:18,20 15:5
16:16 17:24
18:7,24 19:14
22:11,11 23:15
23:15 27:5
28:23 30:1
33:10 43:18
44:19 45:21
49:21 51:9,12
51:14 52:9
55:1,13,23
60:10 61:6,11
63:12 64:21
**rightful** 13:7
29:3 63:9
**rights** 12:3
14:1 27:7
49:22,22 58:7
**ringing** 27:2
**road** 26:24
67:21

**robert** 2:2 5:7
7:25 27:23
35:12
**robinson** 5:1
7:6 8:1 45:10
52:12
**roger** 5:6 7:5
52:11
**role** 10:16
31:18 32:4
**roll** 33:3
**room** 5:12
**rosen** 17:6
18:13,18 20:22
30:12,14,17
31:23 32:8,9
32:17
**rosewood** 34:3
34:7,18 35:7
**rules** 29:25
**rulings** 66:3
**run** 25:22,24
30:25 31:3,5
**running** 22:3
26:5 31:6,6

**s**

**s** 4:1 7:1 8:6
**sale** 11:24 18:9
19:1 23:1,5,7
26:6 44:14
58:23 59:17
60:11
**sales** 18:7,10
20:8
**sasloff** 5:7 7:25
7:25 8:4,25 9:1
9:12 10:19,22

11:2 22:14
23:8,11,17,24
24:1,5,21 25:1
25:6,9,16,20
26:3 27:1,23
27:24 29:6,10
29:16 31:3
33:14,16,20
34:9 35:12,12
35:23 36:2
39:24 43:21
44:6,8,12,20
44:25 45:5,8
45:15,17 46:3
46:6,9,12,14
46:18,22 47:4
47:14,17,23
48:3,6,11,16
48:19 49:10,13
50:23 51:7,10
51:13,21,23
52:1 54:19,23
55:3,9,18,23
56:19,21,24
57:6,10,13,18
58:11,25 59:7
59:15,22 60:1
60:3,18 61:4,7
61:11,14,20,25
62:2,9,12,21
63:17 65:10
**sasloff's** 10:2
12:16 63:11
**satisfied** 17:11
58:18
**saving** 51:6

**saw** 24:12
48:11
**saying** 16:5
18:11 23:6
25:7 26:16
27:20,21 30:8
38:16 48:19
51:7 64:1,8
**says** 13:16,20
14:1 17:17
**scope** 32:15
**second** 11:10
11:25 12:1,9
23:6 43:12
59:16,23 61:5
61:8
**secure** 12:2
28:12 29:18
58:22 59:10
**secured** 23:14
28:24 29:19
38:6 39:17
42:2 58:19
59:2,8,11,12
60:23 62:6,22
63:10,14,24
**see** 9:24 23:4
30:11 36:9
47:19 49:21
55:20,22 56:13
57:5
**seeing** 48:3
62:15
**seeking** 25:13
50:7
**seeks** 43:6

**seems** 28:9
32:9 42:13
47:15
**seen** 20:25
46:20 47:22
48:1,9,23
55:24
**select** 50:20
**sell** 20:19 44:3
44:3
**selling** 22:25
**sells** 58:16
**send** 65:2
**senior** 12:15
59:15
**sense** 16:4 21:8
30:4 40:7
**sent** 25:7
**separate** 11:11
14:12,13
**set** 50:18 56:3
**settle** 32:21
57:20
**settled** 32:22
**settlement** 8:22
9:3 40:25 43:2
43:22
**seven** 20:17
**shares** 18:7
23:25
**sheriff** 46:6
**shorthand**
15:22
**show** 29:12
**showing** 46:11
60:23

**shown** 29:11
**shut** 64:1
**side** 13:24 28:3
28:8 56:6
63:24
**sign** 36:10
**signature** 67:6
**signed** 11:6,12
11:13 46:7
**similar** 28:5
**simple** 41:22
45:20 47:6
48:8
**simplest** 33:13
**simply** 34:9
**single** 9:25
26:11 61:12
62:16
**sir** 27:14 45:20
50:13 51:12,25
52:21 55:24
**sit** 63:25
**sitting** 38:19
38:21
**six** 26:23,25
**sixty** 52:8
**smart** 65:3
**sold** 12:4,7
22:18 58:15
**solution** 31:24
**solutions** 67:20
**solved** 13:2
57:2
**somebody** 15:3
15:4,4 16:2
21:2 26:24
41:22 53:14,20

53:21

**somebody's** 15:18 34:19

**someone's** 37:17

**sonya** 3:25 67:3,8

**sophisticated** 19:9,17

**sorry** 27:3 35:12 37:7 63:3

**sort** 17:17 33:2 36:5

**sound** 21:6

**southampton** 41:9,10 46:22 53:16,22

**space** 15:5 42:9

**speak** 22:13

**speaking** 11:2 19:14 48:13

**specific** 9:15 63:19

**spend** 38:20 39:1,2 63:22

**spent** 38:22

**spoiler** 47:21

**spoke** 17:25 33:16,22

**spread** 44:10

**springs** 56:10

**square** 53:23 53:24,25

**stan** 5:15 8:7

**stand** 17:9 42:5 53:15,22

**standard** 27:11 28:2 29:23,24 33:19 35:21

**standing** 9:20 58:24 59:13 60:7

**standpoint** 31:15

**stands** 13:20

**start** 8:12,22 16:20,21 22:20 43:6

**started** 34:13 35:4,7

**state** 7:3 21:9 22:21 27:14 49:9

**state's** 49:8

**stated** 18:2 28:18 35:13 63:17

**states** 1:1,18 5:9 8:8

**statutes** 22:10

**stay** 21:8 28:16 47:12 53:18 57:23

**stick** 37:2

**stop** 40:15 45:7 45:7 64:10

**story** 16:17

**straight** 51:14

**straightforw...** 41:2

**strictly** 22:11

**structure** 60:4

**stuff** 64:23

**subject** 21:21 21:21,25 39:19 40:9 58:7

**subjective** 63:20

**submit** 36:9 40:10 54:11,14

**submitted** 26:5

**substance** 57:10

**substantially** 44:6

**substantive** 40:22,22

**successful** 19:20 40:24

**sued** 22:6 60:20

**suffolk** 47:24

**suggest** 49:12

**suggesting** 35:20

**suggestion** 46:25 64:19

**suite** 4:12,19 67:22

**summary** 57:4

**summer** 44:2 54:1,1

**sunset** 12:21

**support** 29:20

**supposed** 7:21

**supreme** 24:12

**sure** 13:22 15:6 16:19 18:11 20:4 21:24

39:3,8 49:12 49:15 60:20 61:15

**surprise** 47:15 47:17

**system** 49:11

**t**

**t** 67:1,1

**table** 39:5 42:9

**take** 35:22,23 43:16 47:5 51:3,17 53:21 54:2 56:25 57:21

**taken** 19:14

**takes** 33:10 59:15

**talk** 15:21 52:7 52:8 65:4

**talking** 13:3 20:11 24:21 61:3

**tax** 26:21

**team** 35:6,7

**technicalities** 19:16

**technically** 19:14

**teed** 14:7

**tell** 14:5,6 16:17 34:3 40:8 42:14,19 43:6,10 53:13 53:15 54:15

**telling** 42:17 43:23 45:24 47:21 48:8

63:25
**tells** 27:1,16
  55:1
**ten** 36:20 46:19
  53:25
**tenant** 45:21
**tendered** 46:22
  47:24 48:12
**term** 46:11,16
  55:7
**terms** 17:25
**thank** 8:4
  27:23 33:9,12
  36:2,20 37:5
  37:14,21 51:13
  52:16 56:12
  58:10 65:6,7,9
  65:10
**theory** 47:2
**thing** 20:7,16
  21:19 22:15
  31:9 32:14
  33:13 34:2
  45:20 52:17
  57:22 58:11
**things** 47:20
  56:2 65:2
**think** 8:14,22
  10:12 11:1,11
  13:23 14:2
  15:2,25 16:1,9
  16:10,11,20
  17:19 18:2
  19:13,13 20:6
  20:6,24 21:1,3
  21:15 22:9,10
  22:12 27:1

28:11 29:1
30:4,21,24
31:24 32:6,15
32:19,20,25
33:3,4,6,12,21
36:15 39:4,12
40:1 41:2
42:25 43:25
45:1,5 46:1,14
48:11 51:11
52:4 53:13
58:15,17,20
61:2 62:15
63:12 65:4
**thinks** 53:15
**third** 16:3,3,5
  19:8 42:3
  59:16,23 60:13
  60:14,15
**thirty** 37:19
**thought** 45:18
**thousand**
  43:16 53:25
**three** 11:11
  21:9,11 34:4
  42:20 44:8,19
  61:22
**threw** 56:11
**time** 8:25
  42:20 51:6,24
  54:4 57:17
**times** 29:21
**timing** 57:12
**tishman** 5:1
  7:5 8:1 52:12
**title** 11:10
  19:22 20:18

21:11
**today** 35:18
  41:5,6 48:15
  48:25 50:15
  53:17
**told** 26:25
  51:12
**tomorrow** 21:8
**took** 45:18
**top** 61:5
**total** 43:10,13
  44:9
**transactions**
  18:6
**transcribed**
  3:25
**transcript** 67:4
**transfer** 19:1
**tremendously**
  24:17
**trial** 3:1
**tried** 28:11,13
**true** 67:4
**trust** 36:12
**trustee** 5:10
  8:8 30:1
**trustee's** 27:24
  28:1,22 32:16
**truth** 27:16
**try** 12:21 23:16
  48:1
**trying** 11:6
  14:21,25 15:25
  22:2,19 25:16
  25:22 37:11
  44:25 45:6
  53:7,19 58:13

60:16,19 61:21
64:10
**turn** 8:18
  47:10
**turnover** 14:8
  14:15 15:2,20
  41:7,19 43:4,5
  43:6 50:17
  58:2
**two** 9:22 13:25
  14:13,14 18:23
  19:3 22:24
  25:19 30:4
  32:13 40:22
  50:2 55:10
  58:20 62:24
**type** 33:19

**u**

**u.s.** 2:3 5:10
  27:24 28:1,22
  29:25
**ucc** 13:16 23:7
  58:23,25 60:11
**ultimately** 19:7
  19:10 39:11
**under** 17:12
**underlying**
  23:19,24 24:10
  26:4
**understand**
  16:15 20:1
  24:5 26:19,23
  30:7 41:17
  55:18
**understanding**
  11:5 24:9
  47:24

| | | | |
|---|---|---|---|
| **united** 1:1,18 | **view** 13:24 | 42:10 53:18 | **wish** 31:20,22 |
| 5:9 8:8 | 15:2 20:18 | 55:14,16 | 50:21 |
| **unknown** 2:5 | 32:6 53:5 | **washington** | **wished** 56:12 |
| **unopposed** | 58:14,14 | 5:20 | **wishes** 54:13 |
| 36:23 37:23 | **viewed** 40:3 | **way** 8:12 10:10 | **withdrew** 24:6 |
| **unsecured** 20:9 | **w** | 12:11,11 15:2 | **witnesses** 51:2 |
| 20:12 22:7 | | 17:5 19:22 | **won** 36:1 |
| 39:18,19 42:3 | **wait** 23:6 | 32:22 33:3 | **words** 11:3 |
| **uploaded** | **waives** 16:3 | 40:2,3 48:7 | **work** 19:17 |
| 49:11 | **want** 10:1,1,1 | 53:2 56:5 | 33:5 34:4 |
| **use** 15:7 42:9 | 15:5,22,23 | **we've** 11:9,23 | 37:16 40:19 |
| 43:3 | 16:18,18,23 | 20:25 28:3,3 | 52:9 54:3 |
| **used** 12:16 | 19:15,20 20:6 | 35:13 40:23 | 57:12 |
| **using** 29:20 | 20:16,17 21:8 | 56:12 58:12,18 | **worked** 33:20 |
| 43:1 49:3 | 21:9,16 22:6 | **wearing** 18:23 | 34:6 |
| **ust** 17:2,8 | 22:19 24:16 | 24:7 | **working** 32:14 |
| **utilized** 42:3 | 26:22 27:5 | **week** 42:20 | **works** 48:7 |
| **utilizing** 41:23 | 32:13,13 37:14 | 51:20,20 53:12 | **world** 26:13,16 |
| **v** | 38:5,15 39:3 | 54:4,7,7,9 | 26:17,18 |
| | 39:10,20 40:13 | **weekend** 56:14 | **worth** 11:9 |
| **v** 1:14 7:3 8:6 | 40:14,16 43:2 | **weeks** 34:4 | 44:18 |
| **vacate** 49:7,7 | 43:3,22 44:4 | **welcome** 8:3 | **wrapped** 61:2 |
| **vacating** 49:8 | 48:20 49:3,11 | 8:11 | **written** 46:13 |
| **vacation** 37:17 | 49:16,21,25,25 | **whatnot** 63:24 | 46:14 |
| **valid** 20:24 | 50:2,20,24 | **wickapogue** | **wrong** 14:1,2 |
| **valuation** 55:2 | 51:3,14,20 | 1:8,12 4:4 7:3 | 21:14 22:10 |
| 55:4 | 52:3,3,4 53:6 | 7:15 25:3 | 64:16 |
| **value** 12:4 | 53:17,20 54:10 | **willing** 10:10 | **wrongful** 63:10 |
| 41:12,12 45:24 | 54:10,11 56:4 | 19:17 21:14,15 | **x** |
| 50:1,2 52:19 | 56:15 57:24 | **willingness** | |
| 53:15 54:13 | 60:6 63:11,22 | 26:1 | **x** 1:5,11,17 |
| 58:17 | 64:9 65:5 | **win** 13:19,24 | 10:25,25 41:13 |
| **values** 53:13 | **wanted** 31:25 | 13:24 45:4 | 66:1 |
| 54:15 | 37:19 44:3,3 | 64:16 | **y** |
| **verify** 60:6 | **wants** 18:20,21 | **wins** 53:5 | |
| **veritext** 67:20 | 18:22 19:5 | **wiped** 11:22 | **yang** 5:15 8:7,8 |
| **viable** 12:23 | 20:7 22:12 | | 17:10,23 18:15 |
| | 25:25 39:12 | | 18:17,21 20:3 |

20:5,15,21
27:5 30:14
32:11 33:2,9
34:9 36:11,15
36:18,20 40:10
48:24
**yeah**   51:10
57:19 62:11
**years**   12:16
21:10,11 26:12
31:4,5 46:15
64:15
**yesterday**   18:1
**york**   1:2,20 4:6
4:13 5:4

**z**

**zeroes**   62:17